## *Re* METROPOLITAN RAILWAY RECEIVERSHIP.[1]

PETITIONS FOR WRITS OF MANDAMUS.

Nos. 11, 12, Original.   Argued December 9, 1907.—Decided January 13, 1908.

An unsatisfied, justiciable claim of some right involving the jurisdictional amount made by a citizen of one State against a citizen of another State is a controversy or dispute between the parties within the meaning of

---

[1] The Docket Titles were, in No. 11, Matter of Reisenberg and another, and in No. 12, Matter of Konrad and another. The petition in each case was for a Writ of Mandamus against the Honorable E. Henry Lacombe, Circuit Judge of the United States for the Second Circuit and against the Circuit Court of the United States for the Southern District of New York.

the statutes defining the jurisdiction of the Circuit Court (acts of March 3, 1875, c. 137, § 1, 18 Stat. 470; March 3, 1887, c. 373, § 1, 24 Stat. 552; August 13, 1888, c. 866, § 1, 25 Stat. 433), and such jurisdiction does not depend upon the denial by the defendant of the existence of the claim or of its amount or validity.

In this case there being such a claim, and the requisite diversity of citizenship, the Circuit Court had jurisdiction although the defendant admitted the facts and the liability, waived the objection that the complainants were not entitled to equitable relief, and joined in the request for appointment of receivers.

The mere fact that the defendant is engaged in interstate commerce does not give the Circuit Court jurisdiction; in cases in which this court has sustained the jurisdiction of the Circuit Court in the appointment of receivers, jurisdiction existed by reason of diversity of citizenship and not merely because the defendants were engaged in interstate commerce.

The defense in an equity suit that the complainant has not exhausted his remedy at law, or is not a judgment creditor, may be waived by defendant, and when waived—as it may be by consenting to the appointment of receivers—the case stands as though the objection never existed.

Where the averments of the bill are true, and there is no question as to the diversity of citizenship, or any evidence that a case was fraudulently created to give jurisdiction to the Federal court, the case will not be regarded as collusive merely because the parties preferred to resort to the Federal court instead of to a state court; in the absence of any improper act, the motive for bringing the suit is unimportant.

After the Federal court has properly obtained jurisdiction over a corporation and has appointed receivers thereof, an order permitting other parties closely identified therewith to intervene and extending their receivership over them is not of a jurisdictional nature, and in this case the discretion was, in view of all the facts, properly exercised.

A receivership of a railroad as a going concern, although at times necessary and proper—as in this case, where the refusal to appoint a receiver would have led to sacrifice of property, confusion among the creditors, and great inconvenience to the travelling public—should not be unnecessarily prolonged, and in case of unnecessary delay the court should listen to the application of any creditor upon due notice to the receiver for the prompt termination of the trust or vacation of the order appointing receivers.

THESE are original applications to this court for leave to file a petition for a mandamus, or, in the alternative, for a prohibition, addressed to the Honorable E. Henry Lacombe, one of the Circuit Judges of the Second Circuit, commanding him and the Circuit Court to dismiss the bill of complaint against the railroad companies hereinafter mentioned, and all pro-

ceedings therein, and to vacate injunctions therein issued by such judge, and also to vacate the orders appointing the receivers of such railroads, and to desist from exercising any further jurisdiction over such roads in such suit, or, in the alternative, commanding the judge to allow petitioners intervention, or that a writ of prohibition might issue to obtain the same relief.

It is alleged in the petition in No. 11 that the petitioners are creditors of the Metropolitan Street Railway Company on account of injuries alleged to have been received by each, through the negligence of the company's servants—in one case some time prior to June 27, 1895, and in the other on or about June 13, 1892. Actions had been brought by each, and are still pending at the time of this application.

In No. 12 it is alleged that the petitioner is the administrator of one Paul Planovsky, deceased, and as such he recovered a judgment for damages for the death of the decedent against the New York City Street Railway Company for over eight thousand dollars, which is still unpaid, the company having appealed from the judgment to the Appellate Division of the Supreme Court of the State of New York, and the appeal is still pending. The petitioner also alleged a cause of action in his own behalf, arising out of the refusal of the company to give him tickets entitling him to transfers, by which he was, as he alleged, damaged by the payment of additional fares to the amount of at least two hundred dollars.

The further facts set up in each of the petitions are substantially identical.

Upon reading the petitions orders were made allowing them to be filed, and rules to show cause why the petitions should not be granted were thereupon entered, returnable before this court on the ninth of December, 1907.

On that day there was duly filed a return of the Circuit Judge in each proceeding, who gave therein a short history of the litigation culminating in the appointment of receivers of the railroads mentioned, and stating the then condition of such

litigation. There were filed, as a part of such returns, copies of the bill of complaint under which the receivers were appointed, and of the answer of the New York City Railway Company, and also copies of certain affidavits made in behalf of complainants and defendant in the suit.

It is upon the case made by the petition for a mandamus and the return of the Circuit Judge that the questions arise for the decision of this court.

It appears from such record that in September, 1907, the New York City Railway Company and the Metropolitan Railway Company were corporations organized under the laws of the State of New York, and that the New York City Railway Company was operating a system of surface street railroads in New York County, as the owner of some and the lessee of others. The Metropolitan Railway Company was interested, either as owner or as lessee of some eighteen separate and independent railroads, all of which it had leased to the New York City Railway Company, by lease dated February 14, 1902, for 999 years.

While the New York City Railway Company was operating these various railways a bill against it was filed September 24, 1907, in the United States Circuit Court for the Southern District of New York, by the Pennsylvania Steel Company, a citizen of Pennsylvania, and by the Degnon Contracting Company, a citizen of New Jersey, as complainants, in which the complainants alleged an indebtedness due from the railway company of over $30,000 to the steel company and over $11,000 to the Degnon Company, for rails and other track material and for labor done for the company, at its request, and that payment of the debts had been demanded of the railway company by each of the complainants, and refused. It also appeared that the defendant was insolvent; that it was operating—as owner of some and lessee of other portions— a system of some five hundred miles of track, covering substantially all the surface railroads in New York, comprising many different companies, which owned many different rail-

roads, which had been leased to the Metropolitan Railway Company and by it leased to the defendant company; that all the roads which had been leased to the defendant company were covered by many separate and independent mortgages for different sums, maturing at different times; the New York City Railway Company was under obligations to pay the interest on the funded debt of its lessor, by reason of the lease from the Metropolitan Railway Company under which it was operating these various roads. Failure to meet the interest on the funded indebtedness as it matured would operate as a default and would render the mortgages enforceable.

One of these mortgages was for over twelve and another for over sixteen millions of dollars, and other mortgages increased the whole mortgage debt, on all the lines, to about one hundred millions of dollars. The New York City Railway Company, as lessee, had expended more than twenty millions of dollars in improvements, and was also indebted in other large sums, aggregating between five and ten millions of dollars more, by reason of expenditures for equipment and for repairs; also for taxes, and also for a large amount of floating indebtedness, besides which there were a great number of suits pending against it to recover damages for alleged injuries sustained through alleged negligence of its servants, and which were on the calendars of the New York courts, and the plaintiffs therein were pressing for trial. If judgment were obtained in any of these cases, or in any other of the cases where creditors were pressing their demands, it would result in disastrous consequence to the public, by a possible sale and dismemberment of the system under which the railroads were then operated, and might result in sales of portions of the roads to different individuals or corporations, by reason of which it would be impossible to continue the transfer of passengers from one road to another for one fare, such as was then in operation; and a sale of the roads would probably be for a sum greatly beneath their value, and thus the security for all the creditors for the ultimate payment of their claims would be impaired and very

greatly injured. The defendant was, as it is stated, unable to pay these various obligations as they matured.

For these, and other reasons stated with great detail in the bill, it was asked that the court would take the road into its possession, and that the creditors of the defendant might be ascertained and the court fully administer the fund, con- sisting of the entire railroad system and other assets of the defendant; that the assets should be marshalled and the re- spective liens and priorities existing therein should be ascer- tained, and that the court should enforce and decree the rights, liens and equities of all the creditors of the defendant, as the same might be finally ascertained by the court; that, for the purpose of preserving the unity of the system, a receiver might be appointed, with power to collect all the assets of the com- pany, and with authority to run and operate the railroads, and collect and receive all the rents due and apply the income thereof, under the direction of the court, for such period as the court should order; and for the purpose of protecting and preserving the railroads and assets and property, real and personal, from being sacrificed under proceedings liable to be taken, which might prejudice the same; and that, tempora- rily and pending the suit, an injunction might issue against the defendant and all persons claiming to act by, through or under it, and all other persons, restraining them from inter- fering with the receiver taking possession of the property, and that complainants might have such further relief as was proper.

Upon the filing of this bill a subpœna was duly issued and served upon the defendant, the New York City Railway Com- pany, and an answer was put in by that company, which ad- mitted all the allegations of the bill, and it joined in the prayer of the bill that the court should take possession, by receiver, of the system of railroads operated by the defendant, and that the receiver should, after taking possession of the entire prop- erty, preserve, manage, operate and control the same, and should pay all the indebtedness due or to become due, and

otherwise discharge all the duties imposed by courts upon receivers in similar cases.

Upon this bill and answer an application was made to the Circuit Judge for the appointment of a receiver and such application was granted, and receivers were duly appointed, with directions to operate the road. They were given power to borrow money, if needful in their judgment, in order to comply with the order, and make appropriate payments on account of accruing rent and other necessary charges, so far as might be necessary to pay off current expenses for labor and supplies, but for no other purpose without the order of the court. The defendant and its officers, and all persons claiming to act under the defendant, and all other persons, were enjoined from interfering in any way with the possession and management of the property by the receivers; and it was ordered that the defendant should show cause on the seventh of October, 1907, why the receivership should not be continued during the pendency of the suit; and upon the hearing thereon, it was ordered that any other creditors of the defendant, or any other party in interest, might be heard.

Prior to the seventh of October, 1907, the Metropolitan Railway Company presented a petition to the Circuit Court, wherein it asked to be made a party to the original suit of the steel company and others against the New York City Railway Company, and that the receivership under the bill might be extended so as to expressly embrace the interests of the Metropolitan Railway Company in the property. The petition showed the foregoing facts in relation to the lease of the property to the New York City Railway Company, and it averred that, by reason of these leases and the various mortgages upon portions of the property, and the operation of all the miles of railroad as one system, and because of the fact that the property of the Metropolitan Railway Company was all of it so leased to the New York City Railway Company that it had to depend on the solvency of the latter company in order that payment might be made on the various mortgages on the

various roads for which the Metropolitan Railway Company was responsible as lessee, and which it had also leased to the New York City Railway Company, the two companies were so inextricably bound together that if the New York City Railway Company went into the hands of a receiver and all its property were taken possession of by that officer it was necessary, in the interest of all concerned, that the Metropolitan Railway Company should also be made a party to the suit and the receivership extended to it. Under this petition the court granted an order making the Metropolitan Railway Company a party defendant and extending the receivership to it, and the injunction was also extended so as to enjoin that company from interfering with the possession of the receivers.

In October, 1907, an application was made to the Circuit Court on the part of those who are now petitioners in this court, in which application, it was alleged that the bill of complaint in the above-mentioned suit, and the answer consenting to the appointment of receivers and admitting the allegations in the bill, were filed collusively for the purpose of avoiding the jurisdiction of the courts of the State, and for the purpose of creating a case cognizable under the judiciary act of the United States by the United States courts. And it was averred that the suit in which the bill and answer were filed did not and does not really and substantially involve any dispute between the parties, nor did it involve any real or substantial controversy between them, or any dispute between them which was within the jurisdiction of the court. (All these averments were reiterated in the petitions presented to this court.) Various other facts were included in the petition to the Circuit Court, and it was prayed that an order might be made dismissing the bill in equity for fraud, collusion and want of jurisdiction and setting aside the order appointing a receiver, or, in case that application was denied, then that the order appointing a receiver should be amended by providing that liabilities for personal injuries and for causing the death of individuals should have the preference over other claims on

the distribution of the assets. The petition was subsequently amended so as to add a further prayer that the petitioner, individually and as administrator, might be allowed to intervene in the suit on behalf of himself individually and as administrator and on behalf of all other judgment creditors of the defendant who might come in and contribute to the defense of the suit.

In opposition to this application affidavits were presented by the persons who had verified the original bill of complaint in behalf of the two companies against the New York City Railway Company (and copies of these affidavits are made part of the returns of the Circuit Judge), denying that the purpose of the suit or of the application for the receivership was for stock jobbing or other improper purposes, and each admitted that the suit was brought in the Circuit Court of the United States for the purpose of having that court take jurisdiction, and denied that there was any impropriety or collusion or anything else wrongful in the conduct of the complainants. Each affidavit contained an averment that as non-residents of the State of New York, complainants had an absolute right to decide whether to bring the suit in the courts of the United States or in the courts of the State of New York; and it was denied that the object of the suit was anything else than appears on the face of the bill, namely, the administration of the assets of the defendant in a proper court having jurisdiction thereof. All charges of collusion and suppression of facts and of wrongdoing were denied absolutely. And a similar affidavit was made by the officers of the New York City Railway Company who had verified the answer to the bill of complaint, and copies thereof are also made part of the returns of the Circuit Judge. The application was denied.

On October 25, 1907, a decree was entered adjudging the New York City Railway Company to be insolvent and ordering a reference to a master to take proof of claims and report to the court, providing that all claims should be presented to the master on or before November 30, 1907, and that the

master should give public notice accordingly, the notice to contain a statement of the time and place of first hearing before the master.

On the ninth of November, 1907, the court made a similar order, adjudging the Metropolitan Railway Company insolvent, and adjudging that its assets should be marshalled, and appointing a master as in the other case.

The order continuing the appointment of the receivers permitted all pending suits against the New York City Railway Company and the Metropolitan Railway Company, which were begun before the receivers were appointed, to be prosecuted to judgment. In regard to claims for damages resulting from accidents before the receivers had been appointed, but in which suit had not been commenced at the time of such appointment, it was provided that they might be filed with the receivers and might go to a master for adjustment, and, in any case, it was ordered that if the plaintiff wished a jury trial he might have it, and the claim, if judgment were obtained, would thereby be liquidated, and would rank with claims already in suit.

As a reason for commencing these proceedings petitioners averred that they could not appeal from the order of the Circuit Court denying their application for leave to intervene in the suit commenced by the Pennsylvania Steel Company, and others, nor could they take any steps in that suit, and, as they were enjoined from taking any proceeding in regard to the possession by the receivers of the property of the two railway companies, they were without any remedy looking toward a review of the orders and decrees of the Circuit Court, other than by the application to this court in the manner they are proceeding.

In the course of his decision on the application to make the receivers permanent the Circuit Judge said, in relation to the allegations of collusion, as follows:

"There is no collusion apparent in any legal sense. It is of course manifest that complainants and defendants were en-

tirely in accord and arranged together that the suit should be brought in the Federal court and that the averments of the bill should be admitted by the answer. But there was no colorable assignment of some claim to a citizen of another State, nor any misrepresentation or distortion of facts to mislead the court. On the contrary, examination of the books shows that the financial situation is precisely such as was averred in the complaint."

And in relation to extending the receivership to the Metropolitan Railway Company and allowing that company to be made a party defendant, the court said:

"Having taken its entire property into possession of the court under conditions which left it powerless to recover the same for a year, the receivership left it wholly without means to meet its obligations and it seems to be clearly the duty of the court which has thus deprived it of its resources to protect it against execution while receivers handle and distribute those resources."

*Mr. Roger Foster* for petitioners:

The petitioners are entitled to the remedy by mandamus. Otherwise, they will be enjoined from proceeding in their suits and collecting their claims without a hearing upon a motion to dissolve the injunction, and without any right to review the injunction order and the subsequent order continuing the same.

There are two fundamentals of the common law, which are essentials of that due process of law which is guaranteed by the Constitution. Where there is a right there is a remedy. *Ashby* v. *White*, 1 Salkeld, 19. No person can be denied a hearing before he is prevented from asserting a claim of right. *Pennoyer* v. *Neff*, 95 U. S. 734.

Intervenors have no right of appeal, except possibly in the case of an intervention after judgment upon an application to share in a fund in court; and they never have a right to appeal from an order denying their right to intervene and defend a

suit. *Ex parte Cutting*, 94 U. S. 14; *Jones & Laughlins L'd* v. *Sands*, 79 Fed. Rep. 913; *Credits Commutation Co.* v. *United States*, 91 Fed. Rep. 570, 573; *S. C.*, 177 U. S. 311; *Toledo, St. L. & K. C. R. Co.* v. *Continental Tr. Co* (C. C. A.), 95 Fed. Rep. 497, 536.

If they attack this judgment collaterally, they cannot object because of a failure of the requisite difference of citizenship between parties to a controversy in the same. *Kempe's Lessee* v. *Kennedy*, 5 Cranch, 173, 185; *Skillern's Ex'rs* v. *May's Ex'rs*, 6 Cranch, 267; *Cameron* v. *McRoberts*, 3 Wheat. 591; *Des Moines Nav. Co.* v. *Iowa H. Co.*, 123 U. S. 552, 557, 559; *Dowell* v. *Applegate*, 152 U. S. 327, 337–341; *Pullman's P. C. Co.* v. *Washburn*, 66 Fed. Rep. 790. See also *Ex parte Richards*, 117 Fed. Rep. 658; *In re Lennon*, 166 U. S. 548; *Conkling Co.* v. *Russell*, 111 Fed. Rep. 417; *Hollins* v. *Brierfield Coal Co.*, 150 U. S. 371.

The duty to dismiss the proceedings is statutory. The facts showing that there is no controversy and consequently no jurisdiction, have been found by the judge and are not disputed. There is no room for the exercise by the Circuit Court of judicial judgment or discretion. This court has jurisdiction to issue the appropriate writ in a case like this. *Ex parte Wisner*, 203 U. S. 449; *United States* v. *Severens*, 71 Fed. Rep. 768; *S. C.*, 18 C. C. A. 314.

The entire proceedings are void for want of jurisdiction, and it was the duty of the Circuit Judge to dismiss the same as soon as that matter was called to his attention. Act of March 3, 1875, c. 137, § 5, 18 Stat. 472. It is the duty of the court to dismiss such a case upon its own motion as soon as it discovers its want of jurisdiction or the improper or collusive joinder. *Williams* v. *Nottawa*, 104 U. S. 209; *Hartog* v. *Memory*, 116 U. S. 588. In this case it clearly appeared that there was no controversy between citizens of different States. There was no controversy of any sort. The complainants did not pray the payment of their respective claims. They merely prayed a receivership, coupled with a

general administration of the assets, which general administration they have refused to enter a decree directing.

There can be no controversy between the parties when the defendant has requested the plaintiff to bring the case.

There can be no matter in dispute when there is no dispute between the parties. The proceeding was not an action at common law; but a bill in equity for the appointment of a receiver. Not having reduced their claims to judgment, they are not entitled to the relief prayed except by defendant's consent. *Dawson* v. *Columbia Trust Co.*, 197 U. S. 178, 181.

There is a distinction between "matter in dispute" and "matter in demand." *Hilton* v. *Dickinson*, 108 U. S. 165, 174; *May* v. *Trust Co.*, 128 Missouri, 447, 449; *Lozano* v. *Wehmer*, 22 Fed. Rep. 755, 757; *Gudger* v. *Western R. Co.*, 21 Fed. Rep. 81, 84; *Keith* v. *Levi*, 2 Fed. Rep. 743, 745.

There was collusion between the parties. Collusion does not necessarily imply fraud, but the derivation of the word implies coöperation or playing together. See *Louisville Trust Co.* v. *Louisville, New Albany & Chicago Ry. Co.*, 174 U. S. 674, 677, 687, 689; *Texas & Pacific Ry. Co.* v. *Gay*, 26 S. W. Rep. 599, 612; *S. C.*, 86 Texas, 571; *Balch* v. *Beach*, 95 N. W. Rep. 132, 137. The learned judge who granted these orders was misled by the analogy of certain decisions by the inferior Federal courts upon applications for the appointment of receivers of railway companies engaged in interstate commerce which would be impeded unless receivers were appointed. Such were cases of "property constituting a link in a great continental railway," and manifestly arose under the Constitution and laws of the United States. *Mercantile Tr. Co.* v. *Atlantic & P. R. Co.*, 70 Fed. Rep. 518, 524; *In re Lennon*, 166 U. S. 548, 553.

There was not the slightest justification for the extension of the receivership so as to reinclude the assets of the Metropolitan Street Railway Company; nor for the joinder of that company as a party to the suit. All the assets of that corporation, except its causes of action against its lessee, the directors of both companies and the other persons, who had misappro-

priated and wasted its property, were transferred by the lease to the New York City Railway Company. Those assets were, consequently, already under the protection of the court. The only object of the order extending the receivership over the property of the Metropolitan Street Railway Company was to head off all actions by the state attorney general, the stockholders and creditors of the lessors, that might be brought to compel the lessee and the officers and directors of both parties to the lease to account for the waste of the lessor's property.

In cases where trustees represented conflicting interests, the courts have always been accustomed to allow interventions. *Farmers' L. & Tr. Co.* v. *Nor. Pac. R. Co.*, 66 Fed. Rep. 169; *Farmers' L. & Tr. Co.* v. *Cape Fear & Y. V. Ry. Co.*, 71 Fed. Rep. 38; *Grand Tr. Ry. Co.* v. *Central Vt. Ry. Co.*, 88 Fed. Rep. 622; *Fowler* v. *Jarvis-Conklin M. Tr. Co.*, 64 Fed. Rep. 279; *Hamlin* v. *Toledo, St. L. & K. C. R. Co.*, 78 Fed. Rep. 664, 672; Jones on Corporate Bonds, § 338.

*Mr. J. Parker Kirlin* for the respondent in No. 11, Original:

Granting the order allowing the Metropolitan Street Railway Company to intervene in the original suit, for the protection of its own interests, and those of its creditors in its railway lines which were in the custody of the court, under the prior receivership, was a legitimate exercise of judicial discretion.

The jurisdiction of the Circuit Court to entertain the application of the Metropolitan Company for leave to intervene seems plain. It rests on two facts: first, that the subject matter of the controversy was in the actual possession of receivers appointed by the court, *Freeman* v. *Howe*, 24 How. 450; *Krippendorf* v. *Hyde*, 110 U. S. 276; *Gumbel* v. *Pitkin*, 124 U. S. 131; *Morgan's Company* v. *Texas Central Ry.*, 137 U. S. 171; *In re Tyler*, 149 U. S. 164; *Rouse* v. *Letcher*, 156 U. S. 47; *Carey* v. *Houston & Texas Ry.*, 161 U. S. 115; *White* v. *Ewing*, 159 U. S. 36; *Pope* v. *Louisville &c. Ry.*, 173 U. S. 573; *Porter* v. *Sabin*, 149 U. S. 473, 479; *Byers* v. *McAuley*, 149 U. S. 608, 618; *Price* v. *Abbott*, 17 Fed. Rep. 506; *Armstrong* v. *Trautman*,

36 Fed. Rep. 275; *Compton* v. *Jesup*, 68 Fed. Rep. 263; *S. C.*, 15 C. C. A. 397; *Lanning* v. *Osborne*, 79 Fed. Rep. 657, 662; *Toledo &c. R. Co.* v. *Continental Trust Co.*, 95 Fed. Rep. 497, 505; *S. C.*, 36 C. C. A. 155; *Davis* v. *Martin*, 113 Fed. Rep. 6, 9; *S. C.*, 51 C. C. A. 27; and, second, that the administration of the assets of an insolvent corporation is within the functions of a court of equity, and, the parties being before the court, it has power to proceed with such administration. *Hollins* v. *Brierfield Coal Co.*, 150 U. S. 371, 380; see also *Quincy* v. *Humphreys*, 145 U. S. 82, 95.

The right of the court to permit intervention by a party claiming an interest in the property in the hands of a receiver is not affected by the question of citizenship. *Compton* v. *Jesup*, 68 Fed. Rep. 263; *Continental Trust Co.* v. *Toledo Ry.*, 82 Fed. Rep. 642; *Toledo, St. Louis & K. C. R. Co.* v. *Continental Trust Co.*, 95 Fed. Rep. 497.

The propriety of making lessors of railways parties defendant in a suit, either by a creditor, stockholder or mortgagee, to secure the administration of the assets of an insolvent railway system, where such system includes leased railways, has been repeatedly recognized in the Federal courts. *Central Trust Company* v. *Wabash Railway Company*, 29 Fed. Rep. 618; *Central Trust Company* v. *Wabash Railway Company*, 34 Fed. Rep. 259, 260, 261; *Quincy &c. Ry. Co.* v. *Humphreys*, 145 U. S. 82, 85–89; *St. Joseph &c. Railway Company* v. *Humphreys*, 145 U. S. 105, 106; *Ames* v. *Union Pacific Company*, 60 Fed. Rep. 966–968; *Central Railroad & Banking Company of Georgia* v. *Farmers' Loan & Trust Company*, 79 Fed. Rep. 158–160; *Mercantile Trust Company* v. *St. Louis & San Francisco Ry. Co.*, 71 Fed. Rep. 601, 602; *Mercantile Trust Co.* v. *Farmers' Loan & Trust Co.*, 81 Fed. Rep. 254, 255–258.

*Mr. James Byrne* for the respondent in No. 12, Original:

The claim that the decree appointing a receiver is void because made on the application of a simple contract creditor is without merit. While it is true that a court of equity, on

the application of a simple contract creditor, will not appoint a receiver if objection is made by the defendant that the creditor has not obtained a judgment on which execution has been issued and returned unsatisfied, it is equally true that the defense is one which may be waived either expressly, or by failure to take the objection and that if it is waived the court has jurisdiction of the parties and its decree appointing the receiver is valid. *Hollins* v. *Brierfield C. & I. Co.*, 150 U. S. 371; *West. Electric Co.* v. *Reedy*, 66 Fed. Rep. 163, 164; *Park* v. *N. Y., Lake Erie & West. R. R. Co.*, 70 Fed. Rep. 641, 642; *Waite* v. *O'Neill*, 72 Fed. Rep. 348, 353; *Ross-Meehan Co.* v. *Iron Co.*, 72 Fed. Rep. 957, 959; *Temple* v. *Glasgow*, 80 Fed. Rep. 441, 444; *Schoolfield* v. *Rhodes*, 82 Fed. Rep. 153, 157; *Enos* v. *N. Y. & O. R. Co.*, 103 Fed. Rep. 47; *Horn* v. *Pere Marquette R. R. Co.*, 151 Fed. Rep. 626. See also *Searight* v. *Bank*, 162 Pa. St. 504; *People's Bank* v. *Loeffert*, 184 Pa. St. 164; *Penna. R. R. Co.* v. *Bogert*, 209 Pa. St. 589; *Mut. Life Ins. Co.* v. *Wilkinson*, 100 Maryland, 31; *Clark* v. *Flint*, 22 Pickering, 231; *First Congregational Society* v. *Trustees*, 23 Pickering, 148.

In this case there was absolutely no collusion, no positive action was taken to found a jurisdiction which otherwise would not exist, and the action is genuine and not merely colorable. The suit does, in the words of § 5 of the act of March 3, 1875, "really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court."

In every case that the court has held to be collusive some positive action had been taken to found a jurisdiction which otherwise would not exist, and the action had been merely colorable and not genuine. *Williams* v. *Nottawa*, 104 U. S. 209; *Rosenbaum* v. *Bauer*, 120 U. S. 450; *Lake County* v. *Dudley*, 173 U. S. 243; *Waite* v. *Santa Cruz*, 184 U. S. 302; *Morris* v. *Gilmer*, 129 U. S. 315; *Lehigh Mining &c. Co.* v. *Kelley*, 160 U. S. 327; *Detroit* v. *Dean*, 106 U. S. 537; *Dawson* v. *Columbia Trust Co.*, 197 U. S. 178. In this case there is absolutely nothing of the sort. The jurisdiction always existed from the time the indebtednesses arose down to the present moment. See also

*Blair* v. *Chicago*, 201 U. S. 400; *Dickerman* v. *Trust Co.*, 176 U. S. 181.

*Mr. Frederic R. Coudert* submitted petitions of Paul Fuller, J. Hampden Dougherty and Melvin G. Palliser, stating that they had been appointed receivers of the New York City Railway Company, and the Metropolitan Street Railway Company by the Supreme Court of the State of New York on November 29, 1907, in actions brought by the Attorney General of that State for the dissolution of such companies, on the ground that they had been insolvent for more than one year.

These petitioners, while not appearing or intervening in this proceeding and in no manner conceding the jurisdiction of the Circuit Court of the United States to appoint receivers, as stated in the return herein, and without waiving any objection, respectfully advise this court that some of the matters purporting to be presented by the petition and the question of the jurisdiction of the Circuit Court and of alleged collusion between the parties in the action therein brought for the purpose of creating a case cognizable in the Federal courts may hereafter be presented to this court on behalf of the petitioners as such receivers appointed by the Supreme Court of the State of New York, and they also prayed that any action herein may be without prejudice to their rights in the premises.

Mr. Justice Peckham, after making the foregoing statement, delivered the opinion of the court.

The petitioners base their application for relief in this court upon the contention that the Circuit Court had no jurisdiction in the case brought by the Pennsylvania Steel Company, and others, against the New York City Railway Company, to appoint receivers, or to grant any relief asked for in the bill of complaint in that suit. And, as they have been denied leave to intervene therein, and they cannot appeal from the order denying such request, *Ex parte Cutting*, 94 U. S. 14; *Credits Commutation Co.* v. *United States*, 177 U. S. 311, they assert

they are without any remedy, unless it be granted on this application. The basis of their contention, that the Circuit Court was without jurisdiction, rests upon the assertion that there was no controversy or dispute between the parties to that suit. The counsel for the parties favoring the jurisdiction insist that these petitioners are not entitled to the remedy sought by them in this court, either by mandamus or prohibition, because the case made by them is not such as to authorize the court to issue either writ, as prayed for.

Without going into the question of the right of this court to grant the remedy sought, we prefer to place our decision upon the ground that the Circuit Court had jurisdiction, and that its action in exercising it was, therefore, valid.

The statutes defining the jurisdiction of the Circuit Court (1 Comp. Stat. 507, 508; Act March 3, 1875, c. 137, § 1, 18 Stat. 470; Act March 3, 1887, c. 373, § 1, 24 Stat. 552; Act August 13, 1888, c. 866, § 1, 25 Stat. 433), confer it, among other cases, where "there shall be a controversy between citizens of different States in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid," ($2,000).

Although the amount involved in the suit in the Circuit Court was sufficient, it is insisted now that there was no dispute or controversy in that case within the meaning of the statute, because the defendant admitted the indebtedness and the other allegations of the bill of complaint, and consented to and united in the application for the appointment of receivers. Notwithstanding this objection, we think there was such a controversy between these parties as is contemplated by the statute. In the bill filed there was the allegation that a demand of payment of the debt due each of complainants had been made and refused. This was not denied and has not been. There was therefore an unsatisfied demand made by complainants and refused by defendant at the time of the filing of the bill. We think that where there is a justiciable claim of some right made by a citizen of one State against a citizen of another State, involving an amount equal to the amount named in the

statute, which claim is not satisfied by the party against whom it is made, there is a controversy, or dispute, between the parties within the meaning of the statute. It is not necessary that the defendant should controvert or dispute the claim. It is sufficient that he does not satisfy it. It might be that he could not truthfully dispute it, and yet, if from inability, or, mayhap, from indisposition, he fails to satisfy it, it cannot be that because the claim is not controverted the Federal court has no jurisdiction of an action brought to enforce it. Jurisdiction does not depend upon the fact that the defendant denies the existence of the claim made, or its amount or validity. If it were otherwise, then the Circuit Court would have no jurisdiction if the defendant simply admitted his liability and the amount thereof as claimed, although not paying or satisfying the debt. This would involve the contention that the Federal court might be without jurisdiction in many cases where, upon bill filed, it was taken *pro confesso*, or whenever a judgment was entered by default. These are propositions which, it seems to us, need only to be stated to be condemned. The cases are numerous in which judgments have been entered by consent or default where the other requisites to the jurisdiction of the Federal court existed. *Hefner* v. *Northwestern Life Insurance Company*, 123 U. S. 747, 756; *Pacific Railroad* v. *Ketchum*, 101 U. S. 289, 296. In the latter case the proceeding was "by the consent of all the parties to the suit through their solicitors of record." It was stated in the opinion by Chief Justice Waite that the defendant had filed an answer under its corporate seal, in which every material allegation of the bill was confessed, and it was stated that the bonds sued for were in all respects valid obligations of the company, and the mortgage a subsisting lien. No doubt was expressed as to the jurisdiction of the court, because of the admission of the facts by the defendant and its consent to the judgment. We do not doubt the jurisdiction of the Circuit Court, although the facts were admitted, and the defendant joined with the complainants in a request that receivers should be appointed.

It is, however, argued, that although there may be jurisdiction in the case of railroads engaged in interstate commerce, yet they are exceptions, because in such a case they arise under the Constitution, although there may not have been an actual controversy between the parties. Such cases, it is said, cannot properly be regarded as precedents for claiming jurisdiction in the case of railroads wholly within the State, and doing no interstate business.

A case under the Constitution or laws of the United States does not arise against a railroad engaged in interstate commerce from that mere fact. It only arises under the Constitution, or laws or treaties of the United States, when it substantially involves a controversy as to the effect or construction of the Constitution or on the determination of which the result depends. *Defiance Water Co.* v. *Defiance,* 191 U. S. 184; *Newburyport Water Co.* v. *Newburyport,* 193 U. S. 561; *Bonin* v. *Gulf Company,* 198 U. S. 115; *Devine* v. *Los Angeles,* 202 U. S. 313. The appointment of a receiver in the case of a railroad engaged in interstate commerce does not necessarily involve any such controversy. Jurisdiction to appoint a receiver by a Circuit Court of the United States in cases of railroads engaged in interstate commerce has existed by reason of diversity of citizenship in the various cases between the parties to the litigation, and not because the railroads were engaged in interstate commerce. The necessary diversity of citizenship is alleged to exist in the case before the Circuit Court, and there is no suspicion as to the truth of the averment.

It is also objected that the Circuit Court had no jurisdiction because the complainants were not judgment creditors, but were simply creditors at large of the defendant railways. The objection was not taken before the Circuit Court by any of the parties to the suit, but was waived by the defendant consenting to the appointment of the receivers, and admitting all the facts averred in the bill. *Hollins* v. *Brierfield Coal & Iron Company,* 150 U. S. 371, 380. That the complainant has not exhausted its remedy at law—for example, not having

obtained any judgment or issued any execution thereon—is a defense in an equity suit which may be, waived, as is stated in the opinion in the above case, and when waived the case stands as though the objection never existed.

In the case in the Circuit Court the consent of the defendant to the appointment of receivers, without setting up the defense that the complainants were not judgment creditors who had issued an execution which was returned unsatisfied, in whole or in part, amounted to a waiver of that defense. *Brown* v. *Lake Superior Iron Co.*, 134 U. S. 530; *Town of Mentz* v. *Cook*, 108 N. Y. 504, 508; *Horn* v. *Pere Marquette R. R. Co.*, 151 Fed. Rep. 626, 633.

It is asserted also, that there was collusion between the complainants and the street railway companies, on account of which the court had no jurisdiction to proceed, and therefore the suit should have been dismissed by the Circuit Court under § 5 of the act of 1875, already cited. By that section it must appear to the satisfaction of the Circuit Court that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of that court, or that the parties to that suit have been improperly or collusively made or joined for the purpose of creating a case cognizable under that act, in which case the Circuit Court is directed to proceed no further therein, but to dismiss the suit on that ground. Whether the suit involved a substantial controversy we have already discussed, and the only question which is left under that act is as to collusion.

In this case we can find no evidence of collusion, and the Circuit Court found there was none. It does appear that the parties to the suit desired that the administration of the railway affairs should be taken in hand by the Circuit Court of the United States; and to that end, when the suit was brought, the defendant admitted the averments in the bill and united in the request for the appointment of receivers. This fact is stated by the Circuit Judge; but there is no claim made that the averments in the bill were untrue, or that the debts, named

in the bill as owing to the complainants, did not in fact exist; nor is there any question made as to the citizenship of the complainants, and there is not the slightest evidence of any fraud practiced for the purpose of thereby creating a case to give jurisdiction to the Federal court. That the parties preferred to take the subject matter of the litigation into the Federal courts, instead of proceeding in one of the courts of the State, is not wrongful. So long as no improper act was done by which the jurisdiction of the Federal court attached, the motive for bringing the suit there is unimportant. *Dickerman* v. *Northern Trust Co.,* 176 U. S. 181, 190; *South Dakota* v. *North Carolina,* 192 U. S. 286, 311; *Blair* v. *City of Chicago,* 201 U. S. 400, 448; *Smithers* v. *Smith,* 204 U. S. 632, 644.

The objection to the order permitting the Metropolitan Railway Company to intervene and making it a party defendant in the Circuit Court suit is not of a jurisdictional nature, and the granting of the order was within the discretion of the court. *United States* v. *Phillips,* 107 Fed. Rep. 824; *Credits &c. Co.* v. *United States,* 177 U. S. 311. Having jurisdiction over the New York City Railway Company, and receivers having been appointed for it, there was every reason for extending the receivership to the Metropolitan Railway Company. The facts showed that it was so tied up with the New York company that a receivership for the latter ought to be extended to the former. The Circuit Court Judge so held, and we think very properly, upon the peculiar facts of the case. See *Quincy &c. R. R. Co.* v. *Humphreys,* 145 U. S. 82, 95; *Krippendorf* v. *Hyde,* 110 U. S. 276, 283, 284.

From this review of the various questions presented to us it appears that the Circuit Court had jurisdiction in the suit brought before it, and therefore the application of the petitioners for a mandamus or for a prohibition must be denied.

While so holding we are not unmindful of the fact that a court is a very unsatisfactory body to administer the affairs of a railroad as a going concern, and we feel that the possession of such property by the court through its receivers should not

be unnecessarily prolonged. There are cases—and the one in question seems a very strong instance—where, in order to preserve the property for all interests, it is a necessity to resort to such a remedy. A refusal to appoint a receiver would have led in this instance almost inevitably to a very large and useless sacrifice in value of a great property, operated as one system through the various streets of a populous city, and such a refusal would also have led to endless confusion among the various creditors in their efforts to enforce their claims, and to very great inconvenience to the many thousands of people who necessarily use the road every day of their lives.

The orders appointing the receivers and giving them instructions are most conservative and well calculated to bring about the earliest possible resumption of normal conditions when those who may be the owners of the property shall be in possession of and operate it. We have no doubt, if unnecessary delays should take place, the court would listen to an application by any creditor, upon due notice to the receivers, for orders requiring the closing of the trust as soon as might be reasonably proper, or else vacating the orders appointing the receivers.

The rules are discharged and the petitions

*Dismissed.*