### In re EDWARD ELLSWORTH CO.

(District Court, W. D. New York. October 11, 1909.)

#### No. 3,383.

1. BANKRUPTCY (§ 60*)—"ACT OF BANKRUPTCY"—APPOINTMENT OF RECEIVER.

Where a suit in equity was brought by creditors to wind up a corporation and for the appointment of a receiver, the bill alleging that it was unable to meet its obligations as they matured and that it would be to the advantage of creditors and stockholders that its affairs be wound up, but that it was solvent, the filing of an answer by the corporation, admitting such allegations and joining in the request for a receiver, did not constitute an "act of bankruptcy," under Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), as amended in 1903 (Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 [U. S. Comp. St. Supp. 1907, p. 1025]), which makes it an act of bankruptcy if a debtor, "being insolvent, applied for a receiver or trustee for his property" nor was the appointment of a receiver in such suit made "because of insolvency," so as to constitute an act of bankruptcy under such section.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*

For other definitions, see Words and Phrases, vol. 1, p. 118; vol. 8, p. 7562.]

2. BANKRUPTCY (§ 91*)— ACTS OF BANKRUPTCY—GROUNDS OF APPOINTMENT OF RECEIVERS—EVIDENCE.

A court of bankruptcy cannot consider evidence aliunde to contradict the recitals of an order of a court of equity appointing receivers for a corporation, and to show, contrary to such recitals, that such appointment was made because of the corporation's insolvency, and constituted an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 138; Dec. Dig. § 91.*]

3. BANKRUPTCY (§ 104*)—CORPORATIONS—ENJOINING SALE OF PROPERTY IN EQUITY SUIT.

A court of bankruptcy, on the filing of a petition in bankruptcy against a corporation by a small minority of its creditors, who are hostile to the plans of the majority, will not enjoin a sale of the corporation's property

by order of a court of equity, which acquired prior jurisdiction by the appointment of receivers, where a large majority of the creditors desire such sale, and it does not appear that it will be to the detriment of the minority, or jeopardize their rights.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 156, 157; Dec. Dig. § 104.*]

In the matter of the Edward Ellsworth Company, an alleged bankrupt. On motion to enjoin sale of property. Motion denied.

William T. Tomlinson, Frank L. Gibbons, and H. Edson Webster, for intervening creditors.

George P. Keating, for creditor's committee.

Louis L. Babcock, for receivers.

HAZEL, District Judge. This motion is to enjoin the sale of the assets of the Edward Ellsworth Company, a corporation, by receivers appointed in an equity action brought against it by contract creditors, until there can be an adjudication in bankruptcy on an involuntary petition filed by creditors subsequent to such appointment. The inquiry presented is whether the corporation proceeded against, by admitting the material allegations of the bill in the equity action and joining in the application for the appointment of receivers, can be held in a legal sense to have applied therefor pursuant to section 3a, subd. 4, of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]), as amended by Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 (U. S. Comp. St. Supp. 1907, p. 1025).

If the company, while insolvent, had voluntarily brought an action to wind up its affairs for the benefit of its creditors, and had applied for the appointment of receivers to take charge of its property, the superior right of the bankruptcy court could not safely be questioned; but the interposition of an answer in an action brought by a contract creditor, admitting therein the truth of the allegations of the bill and joining in the prayer for relief, is not believed to be the equivalent of the term "being insolvent, applied for a receiver or trustee for its property." In the equity action the complainants applied for receivers on the ground that the Edward Ellsworth Company was unable to pay its debts as they matured, and that it would be to the advantage of creditors and stockholders to have its affairs wound up. Nowhere in the bill is it asserted that the corporation is insolvent, as that term is defined by section 1, subd. 15, of the bankruptcy act. In fact, the bill contains an affirmative allegation that the defendant is solvent. Such averments, together with the admission by the corporation of their truth and its consent to the appointment of receivers of its property, undoubtedly vested the Circuit Court, in view of the diversity of citizenship of the parties, with power and authority to act in the premises. Re Metropolitan Railway Receivership, 208 U. S. 90, 28 Sup. 219, 52 L. Ed. 403.

The bankruptcy act has not superseded the right and power of a court of equity to take charge of the property of an insolvent corporation for the protection of stockholders and creditors, marshal the same, recognize and enforce valid liens and priorities, and equitably dis-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

tribute the surplus proceeds among its creditors. It is only where a receiver has been appointed in another court because of insolvency, as that term is defined in the bankruptcy law, or where the corporation on its own initiative has applied for the appointment of a receiver or custodian of its property, that an act of bankruptcy under section 3a, subd. 4, has been committed. This provision of the bankruptcy law must be strictly construed. Collier on Bankruptcy (7th Ed.) 83, and cases cited. Inasmuch as the record in the Circuit Court action does not assert or claim that the Edward Ellsworth Company was insolvent, within the meaning of the bankruptcy act, this court is precluded from considering evidence aliunde to contradict the decree or judgment appointing receivers and setting forth the basis of such appointment. This appears to be settled by abundant authority. Blue Mountain Iron & Steel Co. v. Portner, 131 Fed. 57, 65 C. C. A. 295; In re Douglas Coal & Coke Co. (D. C.) 131 Fed. 769; In re Spaulding, 139 Fed. 245, 71 C. C. A. 370; Moss, etc., v. Arend, 146 Fed. 351, 76 C. C. A. 629; Collier on Bankruptcy (7th Ed.) 82; Thomkins Co. v. Catawba Mills (C. C.) 82 Fed. 780.

The petitioning creditors have not intervened in the equity action, or asked leave to institute suit to subject the property and assets of the corporation to the payment of their debts; nor do they dispute the debt which is the subject of the bill in equity. True, it is claimed that there was collusion between the parties to the equity suit to defeat the operation of the bankruptcy act; but it is not contended that there was fraud or wrongful act by either of the parties to confer jurisdiction upon the Circuit Court. Such being the fact, the particular object sought to be accomplished in the equity action, the winding up of the business of the corporation, or perhaps its reorganization, or readjustment of its affairs or any wrongs to dissatisfied creditors that are supposed to ensue therefrom, are not thought material on this application. Re Metropolitan Railway Receivership, supra.

The petition in bankruptcy also alleges that the Edward Ellsworth Company gave an unlawful preference to the Manufacturers' & Traders' Bank of Buffalo; but affidavits read on this motion tend to show a surrender of any asserted preferential security. As to whether a sufficient surrender thereof has been made is a question that may be left for trial in the bankruptcy court. If, after reorganization, the bank receives in full its debt from the new company, the question whether such payment would amount to an unlawful preference, under section 3 of the bankruptcy act, may also be left for future decision.

To effectuate the proposed reorganization and readjustment, evidently, both the secured and unsecured creditors, together with the stockholders, will be obliged to raise or contribute a large amount of money, and probably suffer some loss or depreciation of their claims. The business of the company is large and extensive, the debts are many, and the property valuable. The court has authorized the receivers to issue certificates in a large amount to enable continuing the business until it is wound up or a reorganization effected, and such business presumably has been profitably conducted by the receivers for the past five months. A public sale of the property has several times

been postponed, pursuant to direction of the court, made necessary by the dissentient creditors, and to accord them the opportunity to substantiate their assertions that injustice will be done by permitting a sale by the receivers in equity. The opposing affidavits show that 95 per cent. of the total amount of valid claims presented to the receivers favor immediate reorganization and sale of the property in its entirety. It further appears that various meetings and conferences have been held to discuss the subject of reorganization and readjustment, in which the attorney for creditors who are now dissentients participated, but who, later, when the plan adopted by the majority dissatisfied them, filed a petition in bankruptcy to have the company adjudicated bankrupt. They object to accepting lien bonds of so-called 10-year extension class, and assert generally that their claims are imperiled by the proposed reorganization. Of course, the objecting creditors cannot be compelled to take 10-year bonds in payment of their debts in full. Unless they join the majority creditors, they will be entitled to receive in cash their proportionate share out of the proceeds of the sale of the property.

It is difficult to see, in view of the large indebtedness, secured and unsecured, properties and assets, what advantage there would be if the sale were conducted in the bankruptcy court. The dissentient minority are not barred from bidding in the property, or using their best efforts to obtain a higher price than the bid of the reorganizers. They stand on the same plane with other creditors or bidders. To enjoin the sale, already extensively advertised and promoted, until the question of whether acts of bankruptcy have been committed is settled after trial of the issues raised by the answer of the bankrupt in the bankruptcy proceeding, will certainly mean increased expenses for trustee's commissions, fees of receivers and the referee in bankruptcy, and legal expenses generally. The court should be slow to permit the objections of a few creditors to defeat the plan of reorganization favored by a large majority of the creditors in number and amount, especially as nothing has developed or been proposed by which it may be presumed that the few have any plan by which the property may ultimately be sold to better advantage, or that there is a likelihood of obtaining a larger price therefor.

In deciding this application, it is also to be considered that in several instances the intervening creditors have purchased bonds of the company on the market at a diminished price since the bankruptcy proceeding was instituted, and now seek to recover the full amount due on coupons, and other claims appear to have been bought since such time. That the objection to the reorganization comes from influences originating with a former officer of the Edward Ellsworth Company, as contended by the majority creditors, is likewise entitled to consideration on this application. In such a situation, whatever doubt may arise in the mind of the court as to the propriety of permitting the sale by the receivers should be resolved against the intervening creditors, who manifestly are hostile to the plan of the large majority of the creditors. It is suggested, however, by the court, that if the sale by the receivers operates unfairly, unjustly, or inequitably against any

of the creditors, it would be the duty of the court to withhold confirmation or approval.

It is further objected that the proposed acceptance of valid claims by the receivers at a certain percentage of their face value in payment of any bid would operate harmfully or disadvantageously to the creditors; but such methods are not unusual or improper, where large properties are sold under decree of a court of equity. Ketcham v. Duncan, 95 U. S. 659, 24 L. Ed. 868; Cook on Corporations, § 887. The order of sale, however, should be amended, by striking out the words "as in the judgment of the receivers," in connection with the words "would remain for distribution." The percentage of the face value of claims at which they may be accepted at the bidding in lieu of cash should be reserved until the report of sale is made to the court for its approval and sanction.

The injunction will be vacated, and the property sold by the receivers under the order heretofore entered, as now modified, but not until the expiration of two weeks from the entry of an order upon this decision.