BURTON v. R. G. PETERS SALT & LUMBER CO. et al. (STEARNS SALT & LUMBER CO., Intervener).

(Circuit Court, W. D. Michigan, S. D.    May 13, 1911.)

1. CORPORATIONS (§ 547*)—INSOLVENCY—ASSETS—TRUST FUND—ADMINISTRA-
   TION—"INSOLVENT."
      Since the assets of a corporation which is "insolvent" in the sense of being unable to pay its debts as they mature, are trust funds belonging primarily to its creditors, the administration and distribution of such funds is a matter of general equitable cognizance.

      [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2178–2181; Dec. Dig. § 547.*

      For other definitions, see Words and Phrases, vol. 4, pp. 3647–3655; vol. 8, p. 7689.]

2. CORPORATIONS (§ 547*)—INSOLVENCY—ADMINISTRATION OF ASSETS—EQUITY
   JURISDICTION.
      The prima facie jurisdiction of a court of equity to administer the assets of an insolvent corporation is subject to but two limitations; namely, it cannot proceed until the remedy at law is exhausted or obstructed, and, unless it is enforcing an equitable lien, cannot take from the board of directors against its will the management of its affairs so long as the corporation is a going concern.

      [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2178–2181; Dec. Dig. § 547.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. CORPORATIONS (§ 553*)—INSOLVENCY—ADMINISTRATION OF ASSETS—EQUITY JURISDICTION.**

Where a corporation is insolvent, it may waive its right to further manage its affairs and to have its creditors' claims collected by enforcement of legal remedies, and may consent to the administration of its assets for the benefit of its creditors by a receiver.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2201–2216; Dec. Dig. § 553.*]

**4. CORPORATIONS (§ 558*)—INSOLVENCY—LIQUIDATION—RECEIVERSHIP.**

Where, after the appointment of a receiver for an insolvent corporation, it appears that the receivership is being managed with a view to primary operation and contingent liquidation, rather than primary liquidation and incidental operation, the remedy is not by objection to the court's jurisdiction to appoint the receiver, but to compel the receiver to perform his duty.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2237–2240; Dec. Dig. § 558.*]

**5. CORPORATIONS (§ 558*)—INSOLVENCY—COLLUSION—EVIDENCE.**

Where, at the time proceedings in equity were begun to liquidate the affairs of a corporation, it was insolvent, the fact that, before the bill was filed, the corporation, in contemplation of the filing thereof, had directed an answer admitting the allegations of the bill and consenting to a receivership, and that the parties had agreed on the receiver who was appointed, and the fact that the creditor who should bring the suit was selected at the suggestion of one of the officers of the corporation, so that there might be diverse citizenship to confer federal jurisdiction, was insufficient to establish collusion.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2237–2240; Dec. Dig. § 558.*]

In Equity. Suit by Emma Burton against the R. G. Peters Salt & Lumber Company and another and the Stearns Salt & Lumber Company, intervening petitioner. Application by intervener to compel the receiver for the defendant company to perform a contract made by it with intervener. Denied.

Norris & McPherson, for intervener.
Kleinhans & Knappen, for receiver.

DENISON, District Judge. The intervener asks an order directing the receiver to perform the contract made by the Peters Company with the intervener, before the receivership. The effect of the performance will be to give the intervener a preference over other creditors of the Peters Company. The intervener sets up no special equity entitling it to such preference, and rests its demand on the proposition that the receiver herein must be considered as the agent of the parties bound to carry out their contracts as in the case of the receivership of a solvent partnership, since if it is of a character to bar the ordinary rights of the creditors, it has no sufficient basis for existence. It is clear that the present receivership is not of the first suggested character, and, hence, we are driven to consider the alternative. From this point of view, petitioner alleges that there was no jurisdiction on the face of the pleadings, when the receiver was appointed, and that if jurisdiction appeared, it was collusively conferred.

[1, 2] 1. Jurisdiction. It is a familiar rule that the assets of an in-

solvent corporation (i. e., one which cannot pay its debts. as they mature) are a trust fund belonging primarily to its creditors-; and it necessarily follows that the administration and distribution of such trust fund is a matter of general equitable cognizance. The prima facie power of a court of equity to proceed in such cases, is subject to two limitations, and two only, so far as material in this case: First, it cannot proceed until the remedy at law is exhausted or obstructed; and, second, it cannot, unless it is enforcing an equitable lien, take away from the board of directors of a corporation, against the will of the board, the management of the company's affairs and the lawful disposition of its property, so long as the corporation is a "going concern," or, as sometimes said, so long as it has not "yielded up dominion" over its affairs; and it is only another way of stating this latter limitation to say that the trust fund rule does not actively attach until the company's affairs reach this stage. Both these limitations, however, fail to reach or destroy the underlying, perhaps latent, general, equitable jurisdiction; they are all impediments or obstacles to the exercise of that jurisdiction.

[3] It seems to follow, upon the general principles involved, that the debtor corporation can waive the existence of either of these impediments and can consent that the latent and general jurisdiction shall be exercised. Whatever might otherwise be thought, I consider that this question, in its broadest aspect, is foreclosed by the ruling of Circuit Judge (now Mr. Justice) Lurton, in Horn v. P. M. R. R. Co. (C. C.) 151 Fed. 626, 633. Several of the same Supreme Court cases relied upon by petitioner here are there cited in support of Judge Lurton's conclusion.

I find no distinction in the remark that in that case the defendant debtor "confessed its utter insolvency." The record shows that the insolvency charged in that case was of the same character as that here charged, viz., a present inability to pay debts coupled with the ownership of assets which, properly handled and with the good will preserved, would pay the debts and leave a surplus. The total inability any longer to pay maturing debts and to keep the corporation going appears as fully in this case as in that.

Nor do I find any distinction in the fact which is not there mentioned by Judge Lurton, but which appears in some of his cited cases, that the debtor's property was so heavily mortgaged that an execution would not have been collectible, and that a judgment and execution would have been a useless proceeding. The bill, in the present case, shows that collection by execution, by complainant or by any other creditor, would have been uncertain, and that such proceedings, generally, would have resulted in the loss of their debts in whole or in part by all or by many creditors; but whatever may be the force of these allegations, it is clear that a judgment and execution returned unsatisfied, go only to the point that there is no adequate remedy at law, and that this objection is one which may be waived.

I am satisfied that if the bill in the Horn Case was a general creditors' bill disclosing a general equitable jurisdiction and supporting a receivership, the same things are true of the bill in this case. If par-

ticular and additional equities are necessary, they may be found in the facts that the operations of the defendants extended over several states, that such operations involved extraordinary complications, that the good will of the various enterprises involved, separately and in association, was of great value and of great importance, that there are many hundreds of creditors in the different states having primary claims upon parts of the property and general claims upon other parts, and that the assets of the corporation defendant and of the individual defendant are almost inextricably confused, and the rights of various creditors, as against each and of each as against the other, call very strongly for the powers and procedure of a court of equity.

It is further objected to the jurisdiction that this proceeding is really one for the purpose of having a court of equity take over and manage a complicated business, and pay the debts out of the profits that may be made; and cases are cited to the effect that a court of equity has not this power. I do not question this rule; but it does not apply to this case. There is nothing upon the face of the bill or in facts outside, as they have developed before me, indicating that the purpose was other than to have the assets realized upon and the debts paid, or that a continuing of the business and operation by a receiver were contemplated, except as incidental to the main purpose of realizing upon the assets to the best advantage, and saving for creditors (and, secondly and incidentally, for the defendants) the value of a going business and an entity as distinguished from a dead enterprise and scattered fragments.

[4] In this class of cases, if it later develops that the receivership is being managed with a view to primary operation and contingent liquidation rather than primary liquidation and incidental operation, the remedy is not to conclude that there was no jurisdiction to appoint the receiver, but to direct the receiver to perform his duty.

[5] 2. Collusion. It is next urged that the pleadings and the facts show that this receivership was procured by the defendant, for its own benefit and for the purpose of keeping off creditors while it continued its operations through an instrument of its own selection. No such conclusion is justified. It is true that, before the bill was filed, the debtor corporation, in contemplation of the filing, had directed an answer admitting the allegations and consenting to the receivership, and that the parties had agreed upon the receiver who was nominated and appointed. Doubtless, the debtor corporation believed that the proposed course was the best one for defendant as well as for its creditors. Probably, too, the creditor who should bring suit was selected at the suggestion of Mr. Peters or the Peters Company, and perhaps, so that there might be diverse citizenship. All of these things together, however, do not make up collusion. There is no reason to doubt that the chief creditors approved of and demanded the receivership, and that the defendants yielded to such demand when it could not be longer resisted. In these respects, the case is not dissimilar to Re Metropolitan Receivership, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403, which case also bears upon the jurisdictional questions discussed.

An order may be entered granting leave for filing the intervening petition, reciting a hearing upon the pleadings and affidavits and reports on file, and directing that the petition be dismissed  If the intervener has any equities with regard to any balance unpaid on the 1910 transactions, they may be preserved by suitable further proceeding.