Ex parte RELMAR HOLDING CO., Inc.

**Ex parte MANHATTAN RY. CO. et al.**

**No. 203.**

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1932.

C. D. Williams, of New York City, for the application.

Nathan L. Miller, of New York City, opposed.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

These motions are made upon two petitions for a writ of prohibition forbidding the Circuit Judge, designated under section 22 of title 28, USCA, to hear the suit of American Brake Shoe Company v. Interborough Rapid Transit Company; and the District Court, to entertain it. They pray incidentally a mandamus requiring the court to dismiss the bill. One petition is made by a note holder of the Interborough Rapid Transit Company; the other, by the Manhattan Railway Company (whose control had passed into new hands), a committee of its shareholders, one individual shareholder, and a bond and note holder of the Interborough Rapid Transit Company. So far as the petitioners challenge the jurisdiction or rulings of the Circuit Judge personally, we have already dealt with all the pertinent questions in our opinion filed herewith in Johnson v. Manhattan Railway Company, 61 F.(2d) 934. So far, however, as they attack the jurisdiction of the District Court to entertain the suit at all, it does not dispose of their petitions. That attack is upon the same lines as proved unsuccessful in Re Metropolitan Railway Receivership, 208 U. S. 90, 28 S. Ct. 219, 52 L. Ed. 403, that is, that recourse to the District Court was by "collusion" of the parties. Prohibition and mandamus they allege to be their only method of appeal, because they cannot safely intervene under Equity Rule thirty-seven. As to the procedure adopted we may follow the same course as the Supreme Court in Re Metropolitan Railway Receivership; if the petitions should be dismissed on the merits, we need not consider the propriety of the remedy.

The bill contains the conventional allegation that the plaintiff had presented its claim to the railroad, demanded payment and been refused. The Supreme Court said that this created a "controversy" under section 41 (1) of title 28, USCA, and gave the District Court jurisdiction. The petitioners there had made the same general charges of "collusion" and prearrangement as here; but these did not avail against this part of the bill, which was not denied. Its truth is equally unchallenged here, and in all probability could not be. In such circumstances "collusion" means no more than that the parties have wished to invoke the powers of the District Court; and when the facts exist upon which these depend, it is no objection that they have. To defeat that jurisdiction it must be shown that its foundation is unreal; not that the parties, having an option, prefer the federal tribunal. Unless the Supreme Court has shown a disposition to recede from its former position, nothing is left open for us.

The argument is that Harkin v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 72 L. Ed. 457, and Michigan v. Michigan Trust Co., 286 U. S. 334, 52 S. Ct. 512, 76 L. Ed. 1136, have shown such a disposition. The opinions in thoses cases did indeed say that such suits were subject to abuse, and Harkin v. Brundage in some of its language at least intimated, if it did not positively declare, that if the objection were taken in limine, it should be upheld. Obviously that did not throw any doubt upon the jurisdiction of the court. If the suit was non coram judice, it could make no difference how long it had gone on; a party is at any time free to challenge the substantive jurisdiction of a court, and indeed the court is bound to do so itself. At best the language goes no further than to say that the suit should not be entertained, when it was not necessary and involved an abuse of the power to hold off creditors. And this

was repeated in Michigan v. Michigan Trust Co., though in less absolute terms. We considered Harkin v. Brundage in Kingsport Press v. Brief English Systems (C. C. A.) 54 F.(2d) 497, and though the defendant might there have gone into bankruptcy, we concluded that the language in question was only a cautionary admonition; our decision was cited, apparently with approval, in Michigan v. Michigan Trust Co.

Whatever may be thought of our ruling in that case, if such suits are ever justified, they are justified in the case of a railroad. Bankruptcy not being open, the choice is between this kind of bill, a judgment creditor's bill, either in the District Court, or the state court (section 70, General Corporation Law of N. Y. [Consol. Laws, c. 23]), or a suit to dissolve the corporation. A judgment creditor's bill could not be maintained while there were leviable assets; it would result in preferences until the road was stripped to the bone. Dissolution is a heroic remedy for a public corporation. Of course the suit at bar may be abused, may be used merely as a moratorium; that cannot be told at the outset, and can be corrected only when it appears. But it is of the very essence of the proceeding that creditors shall be held off, if the road is to continue to perform its service. Moreover, the rights of creditors against such a debtor are quite different from those against a private individual. When it becomes insolvent, or will become so in a scramble for its assets, there are interests to protect, quite other than the creditors', severally or at large. All of these cannot get back their money in kind; the great bulk of them must be content with new interests in the property by a reorganization of its capital structure. We do not mean that a minority may be forced to continue in the venture; the court upon a formal sale will assure them something in the form of an upset price (Coriell v. Morris White, Inc., 54 F.(2d) 255, (C. C. A. 2); but that minority must be small, if the reorganization is to go through at all. There are no real purchasers for such property as a whole, and it cannot be sold in parcels without destroying it as a public servant. For these reasons interference with the ordinary remedies of creditors is not a grievance, and the only genuine question that can arise is whether the allocation of new interests in the property shall be made in a state, or a federal, court. Since we have no reason to suppose that the Supreme Court has changed its views upon that point, we adhere to the established practice.

Petitions denied.