FIRST FEDERAL TRUST CO. et al. v. FIRST NAT. BANK OF SAN FRAN-
CISCO et al.

FIRST NAT. BANK OF SAN FRANCISCO et al. v. UNION LAND &
CATTLE CO. et al.

SAME v. SMITH.

(Circuit Court of Appeals, Ninth Circuit. April 7, 1924.)

Nos. 4194–4196.

I. **Mortgages ⚙335—Conduct of trustees waiver of right to foreclose because of receivership appointment.**

Where, at the time a receiver was appointed for a cattle company, it was unable to meet its obligations maturing in the ordinary course of business, the conduct of trustees under a deed of trust giving them the right to foreclose if a decree was entered for the appointment of a receiver, in permitting receiver to administer the estate for over three years and accepting payments by receiver from the general fund of the estate, which reduced the indebtedness secured by the deed of trust from $1,020,000 to $740,000, *held* a waiver of their right to foreclose on account of the receivership appointment.

2. **Estoppel ⚙52—General rule stated.**

Where a person with actual or constructive knowledge of the facts induces another by his words or conduct to believe that he acquiesces in or ratifies the transaction, or that he will offer no opposition thereto, and that other in reliance on such belief alters his position, such person is estopped from repudiating the transaction to the other's prejudice.

3. **Contracts ⚙316(6)—Equity ⚙24—Effect of waiver of forfeiture stated; equity will relieve against forfeiture where forfeiture waived.**

Where there has been a breach of an agreement sufficient to cause a forfeiture and the party entitled thereto either expressly or by his conduct waives it or acquiesces in it, he will be precluded from enforcing the forfeiture, and equity will aid the defaulting party by relieving against it, if necessary.

4. **Receivers ⚙112—Receiver who had accomplished little in 3½ years directed to wind up receivership.**

Where a receiver had administered the affairs of a cattle company for 3½ years, but had accomplished little toward final liquidation, *held* that, within his sound discretion as to terms and time of sale, receiver will be directed to act with diligence to the end that the property may pass into the hands of private parties.

5. **Receivers ⚙92—Courts will not assume management except with view of winding up business.**

Courts will not assume the management of a business or undertaking except with a view of winding up and selling it. The management is an interim management to enable the business to be sold as a going concern, and with the sale the management ends.

6. **Receivers ⚙97—Order authorizing incurring indebtedness annulled.**

Where a receiver had administered the affairs of a cattle company for 3½ years, but had accomplished little towards final liquidation, an order authorizing the incurring of an indebtedness of $110,000 for the purchase of additional cattle should be annulled in so far as it has not been executed, as the time had arrived when there should be retrenchment instead of expansion.

Appeals from the District Court of the United States for the District of Nevada; Edward S. Farrington, Judge.

⚙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

297 F.—23

Suit by the First Federal Trust Company and others against the First National Bank of San Francisco. From an order denying complainants' petition for immediate liquidation and sale, complainants appeal. Order affirmed.

Suit by the First National Bank of San Francisco and others against the Union Land & Cattle Company and others, in which W. T. Smith was appointed receiver for the named defendant. From an order denying an application for a surrender of mortgaged property and from an order denying a petition for intervention and for immediate sale and liquidation and from an order authorizing the incurring of further indebtedness, complainants appeal. First-mentioned order affirmed, second-mentioned order modified as indicated, and order last mentioned reversed.

M. R. Jones, C. G. Dall, and Jones & Dall, all of San Francisco, Cal., for appellants First Federal Trust Co., and others.

McCutchen, Olney, Mannon & Greene, Warren Olney, Jr., J. M. Mannon, Jr., A. Crawford Greene, and John F. Cassell, all of San Francisco, Cal., Hoyt, Norcross, Thatcher, Woodburn & Henley and Benjamin J. Henley, all of Reno, Nev., for appellants first Nat. Bank, of San Francisco and others.

J. W. Dorsey and W. E. Cashman, both of San Francisco, Cal., for appellees Union Land & Cattle Co. and W. T. Smith.

Brown & Belford, S. W. Belford, and George S. Brown, all of Reno, Nev., for appellee W. T. Smith.

Robert M. Price and Prince A. Hawkins, both of Reno, Nev., and William H. Gorrill, of San Francisco, Cal., amici curiæ.

Before HUNT, MORROW, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. On July 28, 1920, a receiver was appointed for the property of the Union Land & Cattle Company, at the suit of the First National Bank of San Francisco, an unsecured creditor. At the time of the appointment, the property of the cattle company consisted of about 226,000 acres of land in the states of Nevada and California; about 69 per cent. of the capital stock of the Antelope Valley Land & Cattle Company; about 40,000 head of cattle; 40,000 head of sheep; 2,500 head of horses; and ranch equipment. The indebtedness of the company consisted of a debt of $1,020,000, secured by deed of trust of the land of the company, and an assignment of the stock of the Antelope Valley Land & Cattle Company, and an unsecured indebtedness aggregating approximately $3,282,000. Of the latter, $400,000 was owing to the plaintiff in the receivership suit and $1,800,000 to the intervening banks. There has been no substantial change in either the assets or the liabilities of the company since the appointment of the receiver. The land and corporate stock remain the same, the number of cattle and sheep has increased to some extent, no part of the unsecured indebtedness, principal or interest, has been paid, but the indebtedness secured by the deed of trust and stock assignment has been reduced to the sum of $780,000.

Two agreements looking to the reorganization of the cattle company and the termination of the receivership were proposed in 1921

and 1922, but these failed of execution for reasons not material here. The deed of trust provided, among other things, that the trustees therein named might foreclose. if an order, decree, or judgment was made for the appointment of a receiver or receivers of the company or of any substantial part of its property, or of the trust estate or any substantial part thereof, or if an order, decree, or judgment was made for the dissolution, winding up, or liquidation of the company, or if it was adjudged an insolvent or bankrupt.

On May 18, 1923, the trustees presented a petition in the receivership suit for leave to sue the receiver and to commence a separate suit or action for the foreclosure of the deed of trust because of the breach of the above condition or default. On July 9, 1923, this petition was denied, with leave to the petitioners to renew the same at a later date, if so advised. On August 24, 1923, the trustees filed a second petition asking leave to intervene in the receivership suit and for permission to sell, as against the receiver, the property described in the deed of trust, and to apply the proceeds of the sale in accordance with the provisions of that instrument. On August 24, 1923, the plaintiff in the receivership suit filed a petition praying that the property of the cattle company be sold forthwith, by the receiver, except such part thereof as might be sold by the trustees under the deed of trust, and that the proceeds of the sale be distributed to the parties thereunto entitled. Petitions in intervention were also filed by the Old Colony Trust Company, the First National Bank of Boston, the National Bank of Commerce of New York, the First National Bank in St. Louis, the National Shawmut Bank of Boston, the National City Bank and the First National Bank of Chicago, unsecured creditors, praying for similar relief. On November 2, 1923, these several petitions were denied, the court reserving the right to file an opinion at a later day. In the order denying the petitions, the court said:

"In denying these petitions I will say that it is the policy of the court to liquidate, as speedily as possible, and to sell these properties, or any unit of them, whenever a reasonable price can be obtained."

The latter order was amended on February 2, 1923, before the expiration of the term. The order as amended did not deny, nor did it grant, the right to intervene; but the prayers of the several petitions for the liquidation and sale were again denied. On October 26, 1923, the receiver petitioned the court for authority to borrow the sum of $110,000, for the purchase of cattle and sheep and to execute notes therefor; such notes to be preferred claims against the assets and property in the hands of the receiver, superior to the claims of creditors, having no specific preferred liens. On November 19, 1923, this authority was granted. The trustees have appealed from the order denying them the right to intervene and to sell the property covered by the trust deed, under the provisions of that instrument; the plaintiff has appealed from the order denying its petition for immediate liquidation and sale; the several intervening banks have appealed from the orders denying them the right to intervene and their prayer for immediate liquidation and sale; and the plaintiff in the receivership suit, and the several intervening banks, have appealed from the order authorizing

the receiver to borrow the sum of $110,000, to be used in the purchase of cattle and sheep. These several orders are now before us for review.

[1-3] We will first take up the appeal from the order denying the right of the trustees to intervene, and the right to sell the property covered by the trust deed, because of the appointment of the receiver. The appellees contend that the trustees were parties to the original suit, in fact though not in name, because of the relationship existing between the plaintiff in the suit, and the First Federal Trust Company; that the appointment of the receiver under the circumstances disclosed by the record did not constitute a default, within the true intent and meaning of the trust deed; and that the trustees have waived the default, if any, and are now estopped to assert the right to foreclose or sell. In view of the conclusion we have reached on this latter question, we deem it unnecessary to discuss or consider the other contentions made. At the time of the appointment of the receiver, the cattle company, if not technically insolvent, was so deeply involved that it could not meet its obligations as they matured in the ordinary course of business and was at the end of its resources. This condition could not long continue. It meant either a receivership or chaos. There was no other alternative. The complaint so averred, and the answer so admitted. The principal ground for the appointment of the receiver was that if the property of the cattle company was attached or sold, it would disrupt and disorganize the business of the company, causing great and irreparable loss to the creditors, and that it was of vital importance to the bondholders and to all concerned that the business of the company should not be interrupted or disorganized until the rights of the various creditors could be ascertained and an opportunity afforded the defendant to meet or refund its obligations under the directions and control of the court. This object was kept in view by the court and the receiver in the administration of the estate, with the consent and acquiescence of all concerned, for a period of three years, during which the receiver paid to the trustees, on account of principal and interest, the sum of $432,000, from funds to which they had no claim and against which they had no lien. The indebtedness secured by the deed of trust has been reduced by the receiver from $1,020,000 to $740,000, all accrued interest has been paid to date, and the security is more than ample. Now, after receiving this vast sum, from the general funds of the estate, to the detriment of the general creditors, the trustees are seeking to disrupt and disorganize the business of the cattle company, thereby causing irreparable loss and injury to the unsecured creditors, the very object the receivership was invoked to prevent. That such a claim is inequitable and unjust does not in our opinion admit of doubt or question.

"Where a person with actual or constructive knowledge of the facts induces another by his words or conduct to believe that he acquiesces in or ratifies the transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice. And this is so regardless of the particular intent of the party whose acquiescence induces action." 21 C. J. p. 1216.

"Also, in the same class of cases, and upon the same equitable grounds, if there has been a breach of the agreement sufficient to cause a forfeiture, and the party entitled thereto, either expressly or by his conduct, waives it or acquiesces in it, he will be precluded from enforcing the forfeiture, and equity will aid the defaulting party by relieving against it, if necessary." 1 Pomeroy, Equity, § 451.

See, also, Swain v. Seamens, 9 Wall. 254, 274, 19 L. Ed. 554; Pokegema Sugar Pine Co. v. Klamath River Co. (C. C.) 96 Fed. 34, 54.

Had the trustees, in this case, claimed an immediate default upon the appointment of the receiver, it goes without saying that the receiver would not have been permitted to make payments on the debt secured by the deed of trust, from the general funds in his hands, and the trustees well knew this when the payments were accepted. The order denying the right to sell under the deed of trust is therefore affirmed.

[4, 5] We will next take up the appeals from the order denying the several petitions for immediate sale and liquidation. In view of the statement in the order that it is the policy of the court to liquidate as speedily as possible, these appeals would seem unimportant, for to more than that the parties were not entitled. But little seems to have been accomplished towards final liquidation during the past 3½ years, and in view of that fact, and of the further fact that the court has authorized an expenditure of upwards of $100,000, for the purchase of additional cattle and sheep, it may well be that the court's idea of speedy liquidation differs from our own. The cattle company is a private corporation, in every sense of the word, engaged in a private enterprise, and the magnitude of its holdings does not change its character or give it immunities not enjoyed by other debtors. For almost 4 years the processes of the courts against its property have been stayed, to enable it to rehabilitate itself and refund or liquidate its indebtedness. Nothing has been accomplished by it during that period, and henceforth the rights of creditors should be the chief concern of the courts. There is no reason or excuse for further continuance of the receivership, except to make a sale of the property for the best price and on the best terms obtainable, and there should be no further delay trusting to or hoping for a change in conditions, or for speculative purposes. How the sale shall be made, when it shall be made, and upon what terms, must, necessarily, be left to the sound discretion of the court below; but, in the exercise of that discretion the receiver should be directed to act with energy and with diligence, to the end that the management of this vast property may pass from the hands of the court into the hands of private parties, where it belongs.

"The court will in no case assume the management of a business or undertaking, except with a view to the winding up and sale of it. The management is an interim management; its necessity and its justification spring out of the jurisdiction to liquidate and sell; the business or undertaking is managed and continued in order that it may be sold as a going concern, and with the sale the management ends." Kerr on Receivers (5th Ed.) p. 268.

See, also, Taylor v. Philadelphia & Reading Ry. Co. (C. C.) 9 Fed. 1; Minot v. Mastin, 95 Fed. 734, 37 C. C. A. 234; Wabash R. Co.

v. West Side Belt R. Co. (D. C.) 197 Fed. 442; Re Metropolitan Railway Receivership, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403.

The court below, by its first order, denied the right to intervene, as well as to the relief prayed, but by its amended order the right to intervene was not denied. Whether by this negative expression the court intended to grant the right of intervention we are not advised, but, in any event, the right to intervene should have been granted, and the petitions should have been entertained to the extent and for the purposes we have indicated.

[6] As already stated, the order authorizing the incurring of an indebtedness of $110,000, for the purchase of additional cattle and sheep, seems inconsistent with a policy of speedy liquidation. Such orders may have been justified in the earlier stages of the receivership, but the time has arrived when there should be retrenchment instead of expansion. It seems that the order has been executed in part without any apparent loss to the parties in interest, and to that extent the order should stand. To the extent, however, that the order has not been executed, the same should be annulled.

The opinion should, perhaps, close here, but we will refer briefly to another matter which has no immediate bearing on the questions before the court. In the course of its opinion, on the application of the trustees for leave to intervene and for an order directing the receiver to surrender the mortgaged property to the trustees for the purposes of sale, the court below, among other things, said:

"In this case the court was not fairly or fully advised. Matters of vital importance were withheld with the knowledge and consent of the trust company. While the court was being informed that the granting of the receivership was of vital importance to the trust company, the trust company was present in the person of its general counsel, and remained silent when it should have spoken."

And again:

"They also knew that they were leading the court to act on partial information, and thus procuring a default which later they or their successors as officers and directors of the First Federal Trust Company might endeavor to use to block the administration of the estate by the court, to secure possession of the property, and later to sell it on such terms as they might fix, without interference, direction or supervision from this or any other court. This clearly was their objective from the very beginning. It is the only reasonable inference to be drawn from the conduct of the trust company officials, the trust company, and the associate bank creditors, at, before and since the appointment of the receiver."

This language was used in reference to the president and attorney for the plaintiff bank, and the First Federal Trust Company, at the time of the appointment of the receiver. Counsel concede that there is nothing in the present record to justify the criticism thus made. Counsel for the receiver, on the one hand, take the position that the question of creating a default did not occur to any of the parties to the receivership at the time of the appointment of the receiver, but was conceived later, and after the former president and counsel had severed their connections with the bank and trust company. Counsel for the cattle company, on the other hand, while conceding that the charges find no support in the record, says or suggests that the charges were

based on other proceedings in the case, not brought into the present record. We are disposed to accept the former view. We can find nothing in the record that leads us to the conclusion that the question of a default, under the trust deed, occurred to any of the original parties at the time, and, if not, it is not at all strange that the provision of the trust deed was not called to the attention of the court. Again, we might ask, why should the omission be charged to the plaintiff and its counsel, rather than to the defendant and its counsel, who appeared in the action, admitted the allegations of the complaint, and consented to the appointment. But the receivership is an accomplished fact, and the courts are now concerned with its winding up and close, not with its origin.

The order denying the application for a surrender of the mortgaged property to the trustees for sale is affirmed; the order denying the petition for intervention and for an immediate sale and liquidation is modified as heretofore indicated; and the order authorizing the incurring of further indebtedness is reversed, except in so far as already executed.