## In re OLD COLONY TRUST CO. et al.

(Circuit Court of Appeals, Ninth Circuit. October 20, 1924.)

No. 4305.

**1. Appeal and error ⬯1198—Order directing receiver to dispose of property, but not to commit default under deed of trust, held not abuse of discretion, under order of Circuit Court of Appeals.**

Order of District Court, directing receiver of cattle company to liquidate its affairs speedily and on best terms within his best judgment, but not to reduce number of live stock below limit fixed by deed of trust, except with consent of trustee or on order of court, *held* not to abuse court's discretion, under judgment of Circuit Court of Appeals, requiring District Court, in its discretion as to terms of sale, to direct receiver to act with diligence in disposing of property.

**2. Mandamus ⬯172—Circuit Court of Appeals would exceed its jurisdiction in ordering payment of money to trustee under deed of trust.**

Where District Court had ordered receiver to pay to trustee moneys agreed to be paid under deed of trust, Circuit Court of Appeals would exceed its jurisdiction in ordering such payment in mandamus proceedings against District Court.

At Law. In the matter of the application of the Old Colony Trust Company and others for a writ of mandamus against E. S. Farrington, District Judge of the United States for the District of Nevada, and another. Application dismissed without prejudice.

McCutcheon, Olney, Mannon & Greene, of San Francisco, Cal., and Hoyt, Norcross, Thatcher & Woodburn, of Reno, Nev., for petitioners.

Jones & Dall, J. W. Dorsey and W. E. Cashman, all of San Francisco, Cal., and Brown & Belford, of Reno, Nev., for respondents.

Before HUNT, RUDKIN, and MORROW, Circuit Judges.

HUNT, Circuit Judge. This is a petition for an order to show cause why writ of mandamus should not issue, commanding the District Court for the District of Nevada and the judge of said court to make forthwith an order for the immediate sale of the properties of the Union Land & Cattle Company, and directing the receiver to sell all of the property and assets of the said cattle company in his hands, and to fix the terms and conditions of sale in accordance with the judgment and decree of the Circuit Court of Appeals, rendered April 7, 1924, in appeals involved in First Federal Trust Co. v. First National Bank, 297 F. 353.

Much of the history of the case will be found in Federal Trust Co. v. First National Bank, supra, which was an appeal from an order denying an application for a surrender of mortgaged property, and from an order denying a petition for intervention, and for immediate sale and liquidation, and from an order authorizing the incurring of further indebtedness. In the opinion in that case, referring to the petitions for immediate sale and liquidation, we said: "There is no reason or excuse for further continuance of the receivership, except to make a sale of the property for the best price and on the best terms obtainable, and there should be no further delay, trusting to or hoping for a change in conditions, or for speculative purposes. How the sale shall be made, when it shall be made, and upon what terms, must necessarily be

left to the sound discretion of the court below; but in the exercise of that discretion the receiver should be directed to act with energy and with diligence, to the end that the management of this vast property may pass from the hands of the court into the hands of private parties, where it belongs."

[1] It is now made to appear that, after the mandate of this court was filed in the District Court, May 9, 1924, the receiver, by a petition filed May 23, 1924, petitioned the District Court to make an order concerning the time, manner, and terms of liquidation of the property of the Union Land & Cattle Company. Hearing was had in June, and in August the District Court made an order to the effect that the receiver proceed "forthwith, and as speedily as may be, to sell and dispose of the property and assets" of the cattle company; that the sale be made in accordance with the best judgment of the receiver, and for the best terms obtainable by him; that he proceed to negotiate and make contracts, and to deliver and to take such measures as in his judgment he might find necessary to facilitate the sale and disposition of the property, and to cause advertisements to be published, to collect indebtedness due; to sell, whenever it shall be practicable, land and live stock together, rather than separately, and in such units and divisions as might be desired by purchasers. The order directed the receiver not to commit any act which might constitute default, as defined in the deed of trust executed by the Union Land & Cattle Company to the First Federal Trust Company and Clark, as trustees, on September 1, 1916, and until further order of the court, liquidation should proceed subject to the provisions of the deed of trust.

The receiver was directed not to sell, without the consent of the trustees named in the deed of trust, cattle or sheep which would reduce the number of cattle on the land to less than 25,000 over a year old, or the number of sheep to less than 25,000, and, when liquidation had proceeded to the point where the sales of cattle and sheep were reduced to the number specified, the receiver should report to the court and apply for further instructions. The receiver was authorized to negotiate with the trustees for releases to effect sales of any real or other property which is subject to the loan under the deed of trust referred to. Authority was given to the receiver to cut and stack hay, to feed and provide for live stock during liquidation. The expressed view of the District Court was that, keeping in mind the interests of all creditors and the necessity of good title to the purchasers of any lands, and having regard for the provision that any reduction of the live stock below 25,000 cattle over a year old and 25,000 sheep should constitute default, entitling the trustees to take possession of all the mortgaged lands and the live stock, the best interests of all concerned would be subserved by selling the live stock and lands together, if practicable, and that private, rather than public, auctions should be had, and that, in the light of the testimony heard by the court, much should be left to the judgment of the receiver, who, however, was directed to proceed diligently to sell the property, with a limitation that he should not sell on a longer credit than three years from the time of sale, and in all such cases should retain ample and unquestionable security for deferred payments.

To the allegations of the petitioners that the District Judge has neglected and refused to make an order looking to the liquidation and sale of the assets of the Union Land & Cattle Company and the termination of the receivership, as required by the mandate of this court, the District Judge has made a return wherein, after putting an interpretation upon the opinion of this court as vesting in the District Court considerable discretion with respect to the time, manner, and terms upon which the sale should be had, the judge refers to the provisions of the trust deed relating to default and to the remedies granted to the trustees, especially to section 16, article III, of the trust deed, wherein the cattle company covenanted to keep and maintain at least 25,000 cattle not less than one year old and 25,000 sheep actually owned by it; also to section 3, article I, and section 1, article III, which require payment of $60,000 of the bonded indebtedness of the cattle company on the 1st day of September, 1924, with accrued interest; to the provision that a failure to comply with either of these conditions would, at the option of the trustees, constitute, without further grace, default; to the provision of section 3, article IV, giving to the trustees the option to enter and sell all the mortgaged and pledged properties; to section 1, subsection d, article IV, which provides that in the event of default the trustees may enter and take possession of all live stock, which immediately thereupon and thereby become subject to the lien and terms of the trust deed; to section 6, article IV, providing that the remedies of the trustees are cumulative; and to the provision of section 16, article III, that the trustees may consent to sales reducing the number of live stock below the limit specified, but in such

event the selling price of all such stock shall be paid to the trustees.

Reference is made to conditions of drought and cattle diseases existing in California during the summer of 1924, and to the market conditions for sheep, and the judge expresses his opinion that the court must consider the rights of all creditors, and to the fact that the receiver holds the property against the trustees only by complying with the conditions of the trust deed, and to the wisdom of avoiding violation of the terms of the trust deed until some satisfactory arrangement to dispose of the property could be made with the trust company, or until a substantial portion of the bonded debt could be paid by selling the unincumbered properties. Reference is made to the valuable equity in the property and to the appraised valuation of $3,690,000; also to sales of lambs and ewes and cattle made within 40 days prior to the date of filing the return on September 15, 1924. The opinion is expressed that more can be realized by private sales than by public auction; that, in addition to the live stock, one of the ranches is under option for sale at $500,000, the option to expire in February, 1925; and to the sales of certain other real estate.

The judge avers that the plan of the receiver is to sell, as speedily as possible, all the live stock, but not to reduce the number below the limit fixed by the trust deed, save with the consent of the trust company, or upon further order of the court, and that in the meantime effort is to be made to secure co-operation of the trust company in some measure which, while protecting the bond holders, will enable the receiver to sell all the property for as near its present value as possible. The judge concludes by saying that he is eager to speed liquidation, and that he believes the plan being pursued will be successful, while, if the plan outlined by the petitioning banks is adopted, it will drive the receivership headlong into default, "resulting in irreparable loss and hopeless forfeiture, which should be applied to the payment of the debts of the cattle company."

An attentive consideration of the evidence heard by the District Court, and of the return, convinces us that the judge is acting by proceeding in the best of faith to carry out the views expressed in the opinion heretofore filed. In that opinion we did not establish any precise rule of action, other than that there should be a speedy end of the receivership, and no further delay in sale and liquidation in the hope of changed conditions or for speculative purposes. Within the scope of that limitation the District Court was to exercise a discretion in the carrying out of our views. Now, if, in the midst of the doings had since our mandate went down, we proceed to lay down a hard and fast rule, we would cut off that discretion vested in the judge, who has considered the circumstances relevant to the situation in apparent understanding of the opinion of this court, requiring all reasonable expedition. It does not appear that there has been failure to act or refusal to carry out the orders of this court, or an abuse of discretionary power given to the judge.

It is argued that the order of the District Court with respect to the sale of 50,000 head of live stock is a refusal to follow the instructions of this court, and that the District Judge has erred in his construction of the effect of those certain provisions of the trust deed heretofore referred to concerning the lien upon live stock and rights of the trustees to claim default. We do not understand that positive decision of rights of the trustees to claim default has been made, or that the court has gone further than to direct the receiver to proceed to liquidate with cautious regard, not alone for the rights of the trustees as they may be determined, but for those of all other creditors. Our understanding of the order of the District Court is that, when sales shall have reached the point of reduction of the herds of cattle and flocks of sheep specified in the deed of trust, the receiver shall apply to the court for further instructions. The court, in its discretion, could properly consider the announced attitude of the trust company to stand upon all rights it may have under the deed, and in proceeding with liquidation up to the point where some definite agreement may be made with the trust company, by which any question of default may be waived, and sales carried on without the probability of long drawn out litigation, the court committed no abuse of discretion.

[2] Counsel for the First Federal Trust Company and Clark, trustees, appeared by permission to state their position that they are entitled to receive from the Union Land & Cattle Company, through its receiver, the moneys agreed to be paid under the provision of the deed of trust on September 1, 1924, which moneys the District Court directed the receiver to pay, and they ask for an order for such payment. But to make such an order in this proceeding would be a most unusual use of the writ of mandamus, and we believe would be in excess of our jurisdiction. American Const. Co. v. Jacksonville

Ry., 148 U. S. 372, 13 S. Ct. 758, 37 L. Ed. 486.

The application is dismissed, without prejudice to the rights of the petitioners to apply for writ of mandate or other appropriate relief, should the situation justify such application.