## MUNICIPAL FINANCIAL CORPORATION v. BANKUS CORPORATION.

## SAME v. CITY FINANCIAL CORPORATION.

District Court, S. D. New York.
Dec. 29, 1930.

See, also, 45 F.(2d) 907.

Rosenberg, Goldmark & Colin, of New York City (James N. Rosenberg and Godfrey Goldmark, both of New York City, of counsel), for receiver.

L. & I. J. Joseph, of New York City (L. Joseph, of New York City, of counsel), for plaintiff Municipal Financial Corporation.

Isidor J. Kresel, of New York City (Charles H. Tuttle, of New York City, of counsel), for defendants Bankus Corporation and City Financial Corporation.

Kohlman & Austrian, of New York City (Francis L. Kohlman and Carl J. Austrian, both of New York City, of counsel), for State Superintendent of Banks.

WOOLSEY, District Judge.

I have decided to terminate these two receiverships in which by orders entered on Monday, December 15, 1930, in the above suits, the Irving Trust Company was appointed receiver in equity of the two defendant corporations above named.

I. The Bank of the United States with which the corporations, parties to these suits, were affiliated, was taken over by the New York state superintendent of banks on December 11, 1930.

The complaints in these two suits, alleging a typical case for an equity receivership, were filed herein on Monday, December 15, 1930. At the same time the defendants filed answers admitting each and every allegation of the two complaints and joining in the prayer for relief contained in the complaints and consenting to the appointment of a receiver as therein prayed for.

Immediately after the papers were filed, the attorneys and counsel for the several parties to the suits, accompanied by the attorney acting for the state superintendent of banks, appeared before me and jointly requested me to appoint receivers in equity of the two defendants.

On the request thus made, and the statements contained in the bills of complaint thus admitted by the defendant corporations, and in consideration of the importance of rendering such aid as was possible under the circumstances in which the corporations affiliated with the Bank of United States were involved, I appointed the Irving Trust Company receiver in equity of the defendant corporations.

The appointment of a receiver in equity was the appropriate remedy for the situation as then shown on the papers before me.

II. At my request, the receiver and its attorneys, who were appointed shortly after the receivership was granted, made a preliminary study of the financial situation of the defendant corporations, as the result of which they submitted a report to me on December 23, 1930, which has been filed in the office of the clerk of this court, and of which a true copy, omitting the exhibits which are annexed to the original, is attached hereto and is hereby made a part of this opinion.[1]

---

[1] To the Honorable John M. Woolsey, United States District Judge:

The preliminary report and petition of the Irving Trust Company, Receiver of the two above named defendant corporations, respectfully shows:

1. Your petitioner was appointed Receiver herein on December 15th, 1930, and qualified as such the same day.

2. On December 17th, 1930, your petitioner retained Messrs. Rosenberg, Goldmark & Colin, attorneys of this City, as its attorneys and counsel, pursuant to the order of this Court.

3. On the following day your petitioner retained

The first exhibit to the original report consists of a graphic diagram of the corporate subsidiaries of the Bankus Corporation.

The second and third exhibits are balance sheets as of December 15, 1930, as shown by the books of the defendants.

III. In the first exhibit giving the corporate subsidiaries of the Bankus Corporation, it is observable that:

(1) The Bankus Corporation owns slightly more than 99 per cent. of the stock of the City Financial Corporation.

(2) The Bankus Corporation, the defendant in the first suit, owns somewhat more than 63 per cent., and the City Financial Corporation, the defendant in the second suit, owns somewhat more than 36 per cent. of the stock of the Municipal Financial Corporation, the plaintiff in both suits.

(3) All the stock of the Delaware Bankus Corporation appears to be owned by the Municipal Financial Corporation.

(4) There are eight subsidiaries in which the City Financial Corporation owns 100 per cent. of the stock, one in which it owns approximately 85 per cent. of the stock, one in which it owns 50 per cent. of the stock, and another, the Consolidated Indemnity Insur-

the services of Messrs. Barrow, Wade, Guthrie & Company, certified public accountants, of this City, as accountants to the Receiver.

4. Your petitioner with counsel and accountants has been and is engaged in the study of the affairs of the defendants, and now makes this preliminary report, in order to receive instructions from this Honorable Court in the premises.

5. Balance sheets of the defendants as of December 15th, 1930, have been submitted to the Receiver by the officers of the companies, which are stated by said officers to reflect the conditions of the defendant companies as shown by their respective books. As to actual conditions, the Receiver must await the report of its accountants. Copies of the December 15th, 1930, balance sheets just referred to are annexed hereto and made a part hereof.

6. Your petitioner and its counsel have endeavored, in the brief time which has elapsed since their appointment herein, to gain a preliminary view of the actual condition of the affairs and the assets and liabilities of the defendants.

7. The defendant companies own a substantial share of the stock of a considerable number of subsidiary, allied and associated corporations. A preliminary chart as to these various corporate relationships is attached hereto and made a part hereof.

8. To present a truly informative picture of these defendants and their allied and subsidiary corporations is not at this time possible. So to do will require considerable study, inasmuch as the affairs of the defendants and such allied, subsidiary and associated corporations are intricately involved and closely intermingled. The investigations so far conducted, however, have made a number of matters clear. These are as follows:

a. The defendant companies appear to have in all free cash balances in bank of less than $15,000.

b. After searching inquiries (not yet, however, completed), the defendant companies do not appear to have any substantial free liquid assets.

c. These defendant companies, through their subsidiary and allied companies, appear to have certain interests in various real estate enterprises, owned by the corporations mentioned in the attached chart. How far these holdings represent any realizable values is impossible to estimate at this time. To gain adequate information as to such questions and to ascertain the precise interests of the defendants and their subsidiary, allied and associated companies in such properties will require considerable time.

d. Based on information furnished by various persons connected with these defendant companies, it would as a matter of first impression appear that a very large sum of money will be needed immediately in connection with these real estate projects. It has been represented to the Receiver that the sum of upwards of $1,000,000 is immediately necessary for the purpose of payment of taxes, rents, interest, carrying charges, construction costs, etc.

e. Whether or not it is desirable for this Receiv-

er of these defendants to endeavor to secure such sums, or whether it is possible to secure them, is a matter concerning which the Receiver cannot as yet express any opinion. To advance new moneys in such projects, even if such new moneys are obtainable, involves the question as to whether such projects are economically sound and whether there are equities in the various properties worth saving in the interests of the creditors of these defendants.

f. Your petitioner has been informed that either the defendant or complainant companies own and have in their possession $2,600,000 of notes of various of the subsidiary or allied and associated companies. The realizable value of these notes is being investigated by the accountants and the Receiver, but it would appear as a matter of first impression that these notes do not represent bankable collateral or assets capable of realization for the immediate financial necessities which appear to exist in reference to these receiverships.

g. The apparent main single item of assets of the complainant and defendant companies consists of 119,869 Bank of United States and Bankus units carried on November 30th, 1930, at an amount in excess of $18,000,000, or an average cost of $157.39 a unit.

h. Substantially all securities in subsidiary and other companies owned by the defendant companies, are, or appear to be, in the possession of the Superintendent of Banks of the State of New York in his official relations to the Bank of the United States (excepting a group of collateral in the possession of the Chase National Bank held as security for loans made by it to the defendant companies).

i. On December 11, 1930, and after the Superintendent of Banks had on that date taken possession of the Bank of the United States, a large amount of securities owned by the parties to this suit were taken to and left at the Bank of the United States. The circumstances of said transaction were such that in the opinion of counsel, your petitioner is entitled to the immediate return of said securities.

j. Whether any immediate steps should be taken by your petitioner to regain the possession of the securities so delivered on December 11th, is a question upon which your petitioner desires the instructions of this court, and asks for such orders as may be appropriate in the premises.

k. Dealing with the finances of the defendant corporations, your petitioner is informed that the Superintendent of Banks claims that the defendant companies, the complainant and all subsidiaries owe to the Bank of the United States the aggregate sum of approximately $16,000,000. Subsidiaries in this case means those which are at least 95% owned by the major corporations.

l. It appears also that practically all of the stock of the complainant corporation is owned by the two defendant corporations.

Summarizing the foregoing, your petitioner shows that representations have been made as above set forth, that large sums of money are pressingly need-

ance Company, in which the City Financial Corporation owns slightly more than 27 per cent., and the Bankus Corporation slightly less than 3 per cent. of the stock.

(5) The Bankus Corporation has six subsidiaries in addition to those above mentioned in which it owns 100 per cent. of the stock, and one in which it owns 50 per cent. thereof.

The diagram of these subsidiaries states on its face that it does not cover certain corporate properties included in a repurchase agreement of January, 1930, between the City Financial Corporation, the Bankus Corporation, the Municipal Financial Corporation, and the Safe Deposit Companies of the Bank of the United States.

These corporate properties subject to the repurchase agreement are the Seventy Wall Street Corporation, San Remo Towers, Inc., the Abenad Realty Corporation, which owns the Squibbs building, and the Sun Holding Corporation, otherwise called the Morris avenue apartment house.

■■ IV. The implications involved in the close intercorporate relationship between the plaintiff and the two defendants in these suits were, I am satisfied, not realized by the counsel for any of the parties when they applied for the receivership, but they must not be passed over without mention.

In Harkin v. Brundage, 276 U. S. 36, 50–52, 48 S. Ct. 268, 72 L. Ed. 457, the Supreme Court took occasion to comment unfavorably on the procedure there followed by a defendant corporation in drumming up a nonresident corporate creditor, with which it had previously been dealing at arm's length, and persuading it to file a creditor's bill in equity in the federal court to forestall a receivership in a state court stockholder's suit.

I cannot help wondering what the Supreme Court would have to say of the opposing parties in the present case, wherein a subsidiary incorporated in Delaware, but owned to the extent of more than 99 per cent. by the defendants, was, as it may fairly be said, in effect summoned from their outside office to bring suit against them and thus to found a federal jurisdiction in equity.

The plaintiff and the two defendants, although incorporated in different states, were in effect one corporation, and whilst, technically speaking, this relationship could not defeat the federal jurisdiction, cf. In re Metropolitan Railway Receivership, 208 U. S. 90, 107–109, 28 S. Ct. 219, 52 L. Ed. 403), a receivership in equity, the granting of which is a matter of grace within the discretion of the court, ought not, without compelling reason, be based on such incestuous litigation.

■ V. There have been two hearings, at which counsel for all the parties and the attorneys representing the superintendent of banks for the state of New York have been present.

These hearings were held on Tuesday, December 23d, and Saturday, December 27th.

The report of the receiver was submitted to all parties at the first hearing. The second hearing was held to enable the parties to make any answer to the report which they found they could make. The report has not been challenged or contravened by affidavit or otherwise.

As a result of the full discussion had at these two meetings, therefore, certain salient facts seem to have been in effect admitted tacitly, if not expressly, by the parties. But whether this is to be assumed or not, for my present purposes it has been established to my satisfaction:

ed in order to save various investments, chiefly real estate enterprises owned by or in which the defendant or complainant corporations have very substantial interests. Whether such investments should be made will depend in each instance on a careful survey of the problems involved in each separate enterprise. These are matters in which the Superintendent of Banks will undoubtedly be deeply concerned, since it appears that if the claims asserted against the complainant and defendant and associated corporations by the Bank of the United States are valid, then and in such event the great bulk of the indebtedness of all of these companies is an indebtedness to the Bank of the United States.

It seems established as a result of the preliminary investigations of the Receiver, its counsel and accountants, that the defendants are without sufficient liquid available assets for any effective administration of the affairs of these defendants in these suits in equity.

In view of the importance of having all feasible steps taken so that the interests of all concerned may best be conserved, your petitioner makes this preliminary report to the end that the Court may

be advised in the premises and may instruct your petitioner.

Wherefore, your petitioner respectfully prays for such order and for such instructions as to the Court may appear proper.

Dated, December 23, 1930.

Irving Trust Company, Receiver

Paul E. Mead, Vice President

State of New York, City and County of New York, ss:

Paul E. Mead, being duly sworn, deposes and says, that he is a Vice President of the Irving Trust Company, the Receiver herein; that he has read the foregoing petition and knows the contents thereof; that the same is true of his best knowledge, information and belief.

Paul E. Mead.

Sworn to before me this 23d day of December, 1930.

Oscar L. Maufman

Notary Public, Kings County

Kings Co., Clks. No. 369, Reg. No. 2371

N. Y. Co. Clks. No. 1013, Reg. No. 2K622

Commission expires March 30, 1932

(1) That, except for $14,000 in cash, these defendants are substantially without liquid free assets.

(2) That, while there may be some valuable equities in real estate or other assets owned by the defendants or their subsidiaries, these assets are or appear to be held by others—chiefly the superintendent of banks—under claim of pledge.

(3) That a large block of securities was turned over to the bank of the United States or to the superintendent of banks on Thursday, December 11, 1930, under circumstances which require proceedings for their recovery.

(4) That careful study will have to be given in considering what funds, if any, should be spent to save the alleged equities above referred to, and that the receiver herein has not even the necessary funds for such a study.

(5) That there are heavy present cash requirements, chiefly in connection with real estate, to conserve the equities referred to.

(6) That, even if it should be decided that it would be wise to meet these cash requirements, they can not possibly be met by the receiver because of a lack of free funds in any substantial amount.

In these circumstances, applying the views which are expressed by the Supreme Court in the cases of Harkin v. Brundage, 276 U. S. 36, 51, 52, 48 S. Ct. 268, 72 L. Ed. 457, and Pusey & Jones Company v. Hanssen, 261 U. S. 491, 497, 500, 43 S. Ct. 454, 67 L. Ed. 763, I feel that I must terminate these receiverships, leaving it to the defendant corporations and their directors, stockholders, and creditors to work out the solution of a situation with which I feel this court, sitting in equity, cannot properly be asked to cope.

■ In these circumstances, if it were in my power I should not hesitate to direct that the parties before me in these suits, namely, the Municipal Financial Corporation, the Bank-us Corporation, and the City Financial Corporation, should immediately file voluntary petitions in bankruptcy. But I am precluded from doing this by the decision of the Circuit Court of Appeals for this circuit in Manhattan Rubber Manufacturing Company v. Lucey Manufacturing Company, 5 F. (2d) 39.

Consequently, the limit of my authority is to make the situation as clear as I may, and then to promptly terminate these receiverships and leave the parties at large to deal as they may be advised with the corporate omelette which has been put before me.

■ VI. When any party comes into equity, he must show his right to come there, or to stay there, by showing that his other available remedies are for some reason inadequate.

Here, on the facts as developed by the receiver's investigations, there is shown a variance—fatal to the equitable relief here sought—between the admitted allegations of the complaint and the actualities of the situation which they purported to set forth.

There is not any right of sanctuary in an equity receivership in the federal court.

Such a receivership is merely an extraordinary remedy which involves taking a party under the protection of the court primarily for the purpose of allowing it a moratorium in order that it may work out its rehabilitation. It involves the possibility of saving the situation by allowing the moratorium, and necessitates sufficient funds to enable the receiver to carry on in the meantime.

A remedy of this kind should only be granted when the court is satisfied from the papers before it that the curative purpose for which the remedy is sought may be accomplished, and that a remedy equally adequate and appropriate to the circumstances cannot be elsewhere found.

Here it is affirmatively shown, I think, not only that the discretion of the court should not be exercised to continue these receiverships, but that a more adequate and appropriate remedy exists elsewhere.

From a practical standpoint, it seems to me so obvious that proceedings in bankruptcy are the proper remedies for the complicated and unliquid situation here shown as to make it almost unnecessary to enumerate their advantages. But a mention of some of these advantages may not come amiss.

On the equity side of the court, a receiver would have to rely as authority for many of the steps which would inevitably become necessary for the proper administration of the estates, if any, here involved on the general powers of an equity court, illustrated by such precedents as might be discoverable.

And such precedents would almost always involve a different state of facts from those which would be here shown, with the result that the remedies incidental to the receiverships would be subject to continual controversy.

In bankruptcy, however, the requisite remedies fall into more established and thoroughly recognized categories. The bankruptcy court, for example, has, and the equity court has not, a statutory mandate, (a) for

examination into the affairs of the corporations under section 21a of the Bankruptcy Act (11 USCA § 44(a); (b) for summary proceedings or suits for recovery of preferences of various kinds; and (c) in addition, has the advantage which equity has not of having all titles to the assets of the estate vest automatically in a trustee elected by the creditors of the bankrupt, who thereupon becomes an officer of the court. In re Morgan Drug Co. (D. C.) 37 F.(2d) 419, 420, and cases there cited.

Equity might, it is true, accomplish the same results by slightly different processes, but it is much better in a multi-partite situation such as this to have at command a procedure which, as such, is unchallengeable.

VII. In concluding this expression of my views, it may not be amiss to observe that it seems to me after sitting in the motion part of this court for several terms, and after having refused some equity receiverships and granted others, that the best procedure for this court to follow in connection with applications for equity receiverships for parties to whom the Bankruptcy Act applies is never to appoint permanent receivers in the first instance, but on the first application to appoint temporary receivers only, under an order to show cause why the receivership should not be made permanent, and to have the order provide that there should be a return day at an early future date at which the receiver should make a report of the result of his investigations of the situation involved. Such an order should be granted only on the filing of an adequate bond by the complainant to be approved in amount, form, and sufficiency of surety by the court, to insure at least the ad interim expenses of administration, and should contain a provision for adequate notice, in such form as may be prescribed by the court, to the several interests which may be involved. This is a fair summary of the course which I purpose following in future when applications are made to me for equity receiverships.

Such a procedure will enable all parties to be heard before the court decides to grant an application for a permanent receivership in equity, and will enable the court to entertain such applications with the cautious inhospitality which is appropriate when it is asked to assume the delicate jurisdiction involved in such proceedings. Cf. Harkin v. Brundage, 276 U. S. 36, 46, 48 S. Ct. 268, 72 L. Ed. 457.

VIII. Summarizing the situation, therefore, I terminate the receivership on three grounds: (1) Because of the intercorporate relationship of the plaintiff and the defendants (2) because there has not been made out on the papers before me the probability of the successful issue of a conservation receivership, and, hence, the reason for the interposition of the equity does not exist; and (3) because there is outside of equity an adequate and, as I believe, a more appropriate and effective remedy for the situation.

Let orders in accordance with this decision be promptly submitted to me for my signature by the attorneys for the receiver.

