In re PARAMOUNT PUBLIX CORPO-
RATION.

BENSINGER et al. v. HILLES et al.
No. 234.

Circuit Court of Appeals, Second Circuit.
Jan. 8, 1934.

Samuel Zirn, of New York City, for cred-
itor-appellants Norman E. Bensinger as
Trustee, etc., and Rose Friedman.

Root, Clark, Buckner & Ballantine, of
New York City (Grenville Clark and Sam-
uel S. Isseks, both of New York City, of
counsel), for appellees Charles D. Hilles, Eu-

gene W. Leake, and Charles E. Richardson, trustees in bankruptcy of Paramount Publix Corporation.

Nathan Burkan, of New York City (Nathan Burkan and Herman Finkelstein, both of New York City, of counsel), for Committee of General Creditors of Paramount Publix Corporation.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Theodore Kiendl and Frederick Sheffield, both of New York City, of counsel), amicus curiæ.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The Paramount Publix Corporation was adjudicated a bankrupt and Messrs. Hilles, Leake, and Richardson were elected trustees by its creditors. Appellants, bondholders of the corporation, appeal from an order of July 5, 1933, which denied their application to remove the trustees for disqualifications and for the illegality of their election. It is claimed that the two meetings held, at which they were elected, were unlawfully conducted by the referee in bankruptcy and the resulting elections are therefore null and void. The leave to appeal granted by this court confined the arguable issues to these questions.

Messrs. Hilles, Leake, and Horowitz were named trustees at the meeting of April 17, 1933. Later Mr. Horowitz resigned and Mr. Richardson was elected, in substitution, on May 19, 1933, at a creditors' meeting. At the meeting of April 17, 1933, the referee was first advised of the decision of this court, announced that day, denying the application for a writ of prohibition, prohibiting the referee from proceeding. Counsel were directed to enter notices of appearance. Present counsel for the appellants did so, appearing generally in their behalf. He appeared specially for Harris and Levy. Counsel for the bankrupt identified schedules attached to the petition. The appellants asked to examine the witness and were refused. Thereupon counsel stated that he appeared specially and challenged the validity of the entire voluntary bankruptcy proceedings. He asked the referee to postpone the election of a trustee until five days after a district judge had rendered a decision on his motion to vacate the voluntary bankruptcy proceedings. This was denied and the referee announced: "The next business is the election of a trustee, and I will now receive nominations." The nomi-

nations were thereupon made, the referee asked for other nominations, and there was no response. Counsel for the appellants then challenged the claims filed by the bondholders' committee and the referee stated: "You will have your opportunity for such after the administration of the estate, but the first thing is to have this estate go forward." Thereupon the three trustees were elected on the vote of the creditors. Counsel for the appellants stated: "I have subpœnaed Mr. Hilles here and I want to examine him as to his qualifications as a trustee." The referee replied: "No, not at this time." The referee then announced the result of the election and adjourned the meeting. Appellants' counsel before adjournment asked to place his objections on the record, and the referee said: "You may put it in writing, and I will file it." Counsel did not file such objections.

At the meeting of May 19, 1933, counsel for the appellants asked to make a statement. The referee asked whether he had a nomination to make. Other counsel, representing other bondholders, made requests for an inquiry into the competency of Mr. Richardson. The referee refused a request for an inquiry, stating: "Of course, proceedings can afterwards be taken if desired * * *." No other nomination was made and Mr. Richardson was elected. Counsel took exception to the refusal to permit an inquiry as to the competency of Mr. Richardson and excepted to his election.

At these meetings counsel objected to the qualifications of the trustees and asked for an opportunity to show disqualification. The referee took the view that the only business of the first meeting was to elect trustees and to proceed with the administration of the estate. Apparently he considered that disqualification must be shown at some later time, and as soon as the voting was completed, he approved the election as a matter of course. In this he was in error. Section 44 of the Bankruptcy Act (11 USCA § 72) provides that: "The creditors of a bankrupt estate shall, at their first meeting * * * appoint one trustee or three trustees of such estate. * * *" The courts recognize that the choice of trustees is primarily with the creditors and will require substantial reasons to override their choice. In re Mayflower Hat Co., 65 F.(2d) 330 (C. C. A. 2). But section 45 of the Bankruptcy Act (11 USCA § 73) requires trustees to be competent and, to achieve the purposes of the statute, General Order 13 as amended (11 USCA § 53),

makes the creditors' choice "subject to be approved or disapproved by the referee or by the judge." There is placed on the referee the duty to approve or disapprove the creditors' choice. .

The exercise of a sound discretion by the referee in approving or disapproving a trustee will not be disturbed. Garrison v. Pilliod Cabinet Co., 50 F.(2d) 1035 (C. C. A. 10); In re Leader Mercantile Co., 36 F.(2d) 745 (C. C. A. 5); Wilson v. Continental B. & Loan Ass'n, 232 F. 824 (C. C. A. 9); In re Merritt Construction Co., 219 F. 555 (C. C. A. 2). But, as the cited cases fully disclose, the referee must in fact exercise a sound discretion. He must permit a disclosure of facts upon which the exercise of discretion must be based before he can properly approve the trustee and, to be sustained, the record before him must show a basis for the exercise of a sound discretion. At these meetings, the referee's approval of the trustees was merely formal, proceeding on the theory that the all important thing was to have the trustees elected and to postpone a test of their disqualification. Such procedure betrays a lack of appreciation of duty under General Order 13 to approve trustees. A prompt administration of the estate should not be retarded by hearing reasons why creditors' choice of trustee should not be approved. Usually such objections may be disposed of at the same time as the election at the first meeting. If that procedure be followed, a proper record showing the basis of the referee's exercise of discretion will appear.

The duty of approval or disapproval under General Order 13 is an entirely different duty from the duty of removal. A procedure which assimilates the former to the latter is not permissible. But the error here does not require a reversal because, as will now appear, the claims of disqualification, fully set forth in the affidavits and here considered, are available to the appellants on this appeal only on the application for removal. The merits of the claims of disqualifications are raised in this proceeding, after the election, and were fully argued.

By an order to show cause, the appellants brought on a motion, resulting in the order appealed from, to remove trustees or to take further proof, if the court desired, of their disqualifications. The motion was denied after the argument, but the court did not state the reasons therefor. In the circumstances, this court may determine for itself whether there is any legal reason, apart from discretion, to deny the motion. At the outset, it was argued that the appellant should have proceeded before the referee and then by motion to review. Affidavits state that the court so advised them. In so far as the present application seeks to set aside the original approval of the trustees and to have the original meeting declared void, the proper procedure would have been for the appellant to have reviewed the pro forma order, approving the appointment of the trustees, and having failed to do so, that part of his motion was properly denied. In re Reis Rubber Products Co. (D. C.) 18 F.(2d) 347; In re Rury, 2 F.(2d) 331 (C. C. A. 9); In re Arti-Stain Co. (D. C.) 216 F. 942.

But the appellants ask for the removal of the trustees or the court to take proof of their disqualifications. Bankruptcy Rule 20, of the Southern District, provides that, except where the referee has no jurisdiction, all applications shall be made to him, and if made to the court, it shall refuse to hear the matter or receive the papers and the same shall be renoticed before the referee. Thereafter, on April 24, 1933, General Order 13 was amended (11 USCA § 53) to give the referee jurisdiction over removal of trustees. Prior to that amendment only the court had jurisdiction. General Order 13 and Rule 20 may be read as giving the court and referee concurrent jurisdiction. The appellant, we think, should be given the benefit of this concurrent interpretation since the district judge did not comply with Rule 20 and refuse to receive the papers. We are not advised whether his denial was based upon procedure or on the merits. In this view of the case, the appellants proceeded properly and we may consider the merits of that part of the appeal seeking removal of the trustees for disqualification. In so doing, we are not reviewing the exercise of discretion but are determining whether there is any sufficient basis for removal.

The application for removal is based upon the affidavits setting forth alleged disqualifications. Mr. Hilles' disqualification is based on his stock ownership and directorship of the Bankers' Trust Company. This bank is being sued by the trustees, with other banks, for alleged preferences in large payments of money made by the corporation before bankruptcy. Hilles was appointed a receiver in equity January 26, 1933, prior to the institution of the bankruptcy proceedings. He resigned as director of the Bankers' Trust Company. He has owned 100 shares of its stock since May 29, 1931. The

706

suit to set aside transactions alleged to be preferences was started by him as trustee. He is also said to be disqualified because as resident manager of the Employers' Liability Assurance Corporation he collected insurance premiums from the bankrupt amounting to about one per cent. of his insurance business; also, that he received premiums of policies of insurance taken out by three of the eight banks, defendants in the preference suits. Other grounds of disqualification are that he is a fellow member in several exclusive clubs with many officers and directors of some of the banks alleged to have received preferences from the bankrupt; that he was at one time an Assistant Secretary of the Treasury and made friendly contacts with many officers and directors of banks in this group; and that a congressional investigation revealed that he was on the "favored client list" of a large banking house interested in the banks. In his affidavit in opposition, Mr. Hilles states that: "There is no officer or director of any bank which is a member of the Bank Group or of any other bank, with whom my relations, through clubs or otherwise, are such that I would be in the slightest degree embarrassed in taking whatever action may be advised by counsel with reference to the agreements between Paramount and the Bank Group." And he points to the fact that he instituted the suit against the banks. He seems to have acted in full performance of his duty toward the creditors with regard to this litigation. He severed his directorship in the bank at once. He is a man of integrity and ability accustomed to large business affairs and has imposed upon him now a trusteeship fraught with serious responsibility and he has exhibited all the marks of integrity of purpose in fulfilling that trust. Under these circumstances he should not be removed. Fowler v. Jarvis-Conklin Mortg. Trust Co. (C. C.) 63 F. 888. His past business relations with the bankrupt and with the banks, if any, are not disqualifications.

Mr. Leake, when nominated as a trustee was chairman of the board of directors of the American Express Company and an officer of Film Securities Corporation. Before his election this fact was made known to the creditors. He resigned as president and director of Film Securities Corporation, as director of Lowe's, Inc., and as director of the American Express Company.

Mr. Richardson was vice president and Treasurer of the Fox Film Corporation prior to his election, and it was announced to the creditors, if elected, he would resign from these positions and after election he immediately did so. His former connection with a competitor did not disqualify him as a trustee. Prior to August 1, 1931, he was connected with the Chase National Bank, but the remote interest of the Chase National Bank in these proceedings does not disqualify him. It is not a defendant in the preference suits.

The experience and intimate knowledge of Leake and Richardson in the motion picture industry undoubtedly was the cause, as it may well be, for their election. They were not disqualified by reason of their several and previous business connections.

Appellants refer us to authorities of which we will take note. In Wilson v. Continental B. & L. Ass'n, 232 F. 824 (C. C. A. 9), a trustee, elected by creditors and disapproved by the referee, was a trust company which also was trustee under several instruments of trust for the bankrupt and, in addition, had a common director with the bankrupt who from time to time had acted as attorney for the bankrupt. In the case of In re Anson Mercantile Co. (D. C.) 185 F. 993, the trustee elected was a stockholder and employee of a grocery company which had solicited creditors to send their claims to be used in securing his appointment under an offer by the grocery company to handle the claims free of charge. The grocery company was a creditor of the bankrupt and held security for part of its debt and was charged with having received preferences. The court disapproved the election of the trustee because he was an employee of the creditor alleged to have received preferences when he had received his appointment as a result of their active efforts. In the vote taken for the present trustees, the bank creditors did not participate. In the case of In re Scott (D. C.) 53 F.(2d) 89, the referee refused to approve the election of a trustee elected through the active solicitation of claims by his employer, a credit men's association. In Coy v. Title G. & T. Co. (C. C.) 157 F. 794, the elected receiver was disqualified because he had been a director and vice president of the insolvent company and as such had given his consent to the policy which brought about insolvency.

We think that the claims of disqualification of these trustees are without merit.

Order affirmed.