### In re PARAMOUNT–PUBLIX CORPORATION.

District Court, S. D. New York.
July 23, 1934.

Supplemental Memorandum Aug. 2, 1934.

506

Root, Clark, Buckner & Ballantine, of New York City (Elihu Root, Jr., and Samuel S. Isseks, both of New York City, of counsel), for receivers.

Samuel Zirn, of New York City, for bondholder creditors Robert S. Levy, Rose Freedman, and five other creditors.

Rosenberg, Goldmark & Colin, of New York City (Godfrey Goldmark, of New York City, of counsel), for Paramount-Publix Corporation.

Saul E. Rogers, of New York City, representing bondholders.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Frederick Sheffield, of New York City, of counsel), for a Bondholders' Protective Committee.

House, Holthusen & McCloskey, of New York City (Victor House, of New York City, of counsel), for Bondholders.

White & Case, of New York City (Milton Kramer, of New York City, of counsel), for Bankers' Trust Co., Lawyers' County Trust Co., and Manufacturers' Trust Co.

Donovan & Raichle, of New York City (B. M. Webster, Jr., of New York City, of counsel), for Broadway and 20th Street Properties, Inc., complainant in equity proceeding; and for Morrison, Hohfeld, Foerster, Shuman & Clark, of San Francisco, Cal.

Larkin, Rathbone & Perry, of New York City (Thomas H. Dugan, of New York City, of counsel), for Central Hanover Bank & Trust Company, creditor.

Adolph Feldblum, of New York City, for petitioning creditors in the involuntary petition.

Milbank, Tweed, Hope & Webb, of New York City (Chester T. Lane, of New York City, of counsel), for Chase National Bank of City of New York.

Nathan Burkan, of New York City (James A. Murray, of New York City, of counsel), for Creditors' Committee (R. E. Anderson).

Szold & Brandwen, of New York City (Maxwell Brandwen, of New York City, of counsel), for Bondholders' Committee.

Kaufman, Weitzner & Celler, of New York City (Benjamin H. Berman, of New York City, of counsel), for petitioning Creditor Southern District Court Reporters.

WOOLSEY, District Judge.

My decision in this matter is as follows:

1. On the application for an allowance by Charles D. Hilles, Esq., as one of the receivers in equity, I grant him an ad interim allowance on account in the sum of $20,000, to be paid to him at once.

2. On the application for allowances by Messrs. Root, Clark, Buckner & Ballantine, attorneys for the equity receivers, I grant to them an ad interim allowance on account in the sum of $75,000, to be paid to them at once.

3. On the application for allowances by Messrs. Rosenberg, Goldmark & Colin, attorneys for the bankrupt, I grant to them an ad interim allowance on account in the sum of $15,000, against which must be credited the sum of $5,000 already received by them from the bankrupt, leaving a net ad interim allowance of $10,000, to be paid to them at once, plus their disbursements as found by the referee in the sum of $253.-66, making a total allowance of $10,253.-66.

4. The three petitioners above named are hereby given leave hereafter to apply to have final allowances for their respective services in the equity proceeding above referred to fixed, at the final application for allowances on the termination of this proceeding, and of other proceedings involving the bankrupt's estate, whether under section 77B of the Bankruptcy Act (11 USCA § 207) or otherwise, which may come before this court.

5. As to the application for allowances of Adolph Zukor, Esq., as one of the receivers in equity, I am not giving him any allowance at the present time for the reasons hereinafter stated, but this is without prejudice to his making a later application for an allowance on proper showing.

6. As to the application for allowances of Messrs. Cravath, De Gersdorff, Swaine & Wood, special counsel in the Quittner case, hereinafter referred to, I allow them a fee of $15,000 for their services therein since the receivership in equity, plus their disbursements, as found by the referee, of $409.68, making a total allowance of $15,-409.68.

7. In all other respects the report of the referee is confirmed and the other recommendations thereof are approved.

I. Attorneys for certain creditors object to the granting of any allowances in the equity proceeding on the ground of its alleged invalidity and also object as to the amount of the allowances given by the referee.

I shall first deal with the principal points raised by such objectors.

■ A. The allowances here sought are not claims in bankruptcy but are administrative expenses and, consequently, the provision of section 57n of the Bankruptcy Act (11 USCA § 93 (n) as to the filing of claims within six months does not apply. In re Levitt (D. C.) 126 F. 889. Cf. Ward v. First National Bank of Ironton, 202 F. 609, 612 (C. C. A. 6).

■ Such allowances must be fixed by the bankruptcy court as the paramount jurisdiction. Gross v. Irving Trust Company, 289 U. S. 342, 344, 345, 53 S. Ct. 605, 77 L. Ed. 1243, 90 A. L. R. 1215.

The principle which applies to cases of this kind is that the estate passes from the hands of the equity receiver into the hands of the trustee in bankruptcy subject to a lien for proper administrative expenses whilst it was in equity receivership. Cf. In re White, 58 F.(2d) 203 (C. C. A. 2); Paine v. Archer, 233 F. 259 (C. C. A. 9); Hume v. Myers, 242 F. 827 (C. C. A. 4).

In this case, however, we do not have to deal merely with the implication that there are such liens against the estate in bankruptcy because by Judge Bondy's order of April 19, 1933, it is expressly so provided.

Furthermore, inasmuch as such allowances do not involve claims in bankruptcy, there was not any necessity that oral evidence should be taken in connection with such allowances, as is required in connection with proof of contested claims by General Order in Bankruptcy 21 (6), 11 USCA following section 53. Cf. In re Reliance Storage & Warehouse Company (D. C.) 100 F. 619; In re Falk, 30 F.(2d) 607, 608 (C. C. A. 2).

■ The referee accordingly was acting entirely within his discretion in refusing to hear oral evidence on the petitions for allowances to which objections were made.

B. So far as its conservation and administration is concerned, this estate has been involved in only two procedural chapters in this court; the first, an equity consent receivership, and the second, a petition in voluntary bankruptcy in which trustees have been duly elected and qualified.

The validity of the equity receivership, so far as the subject-matter jurisdiction of this Court is concerned, is settled by the decision of the Circuit Court of Appeals in Re Gochenour et al., 64 F.(2d) 500 (C. C. A. 2), and the regularity of this bankruptcy proceeding and of the election of the trustees therein has been settled by the Circuit Court of Appeals in the case of Bensinger et al. v. Hilles et al., 68 F.(2d) 703 (C. C. A. 2).

■ Those decisions in effect constitute the law of the case so far as I am concerned in dealing with allowances for this estate.

It is true that in Re Gochenour et al., 64 F.(2d) 500, at page 501 (C. C. A. 2), the court, in denying an application for a writ of mandamus, prohibition, or certiorari against Judge Bondy, said: "What we say here we intend to be without prejudice to the rights of the petitioners or others to urge the invalidity of the receivership because of prior state actions or for other reasons advanced in the court below."

So far as appears from the papers before me, I do not see any ground either because of prior state actions or otherwise for considering the equity receivership invalid.

■ Certainly the fact that an involuntary petition in bankruptcy was filed in this court on January 26, 1933, before the equity receivers were appointed, did not make the equity receivership invalid.

It is common ground that there was not any application for a receiver in the invol-

untary bankruptcy proceeding, and as it would only be an appointment of a receiver in that paramount jurisdiction which could preclude an equity receivership, we have here merely a case where, so to speak, the remedy available to the petitioners in the involuntary bankruptcy petition was not driven home. Consequently, the existence of that litigation could not and did not affect the power of the equity court to act in a case in which it had subject-matter jurisdiction.

The obvious absurdity of holding otherwise was well illustrated by Judge Caffey in an unreported oral decision, National City Bank, etc., v. Cuban Dominican Sugar Corporation (E. 65–177, S. D. N. Y. 1932), in which he said:

"It would be absurd to say that the mere fact that a suit has been brought and is pending in another court ipso facto divests this court of jurisdiction to act. If it were otherwise, consider what the consequences would be.

"An action might be commenced either in another Federal court or in a state court and allowed to lie quiescent; it might remain dormant indefinitely. Parties might then come into this Court, file pleadings and make allegations which invoke the jurisdiction of the court,—presenting a case which is within the jurisdiction of this court as prescribed by law; presenting facts under which, nothing else appearing, they would be entitled to relief. * * * To say that under such circumstances this court should leave the parties remediless, solely because an action was pending in some other court, either State or Federal, it strikes me would be little short of ridiculous."

Cf. also In re Gochenour et al., 64 F.(2d) 500 at page 501.

I find, therefore, that the appointment of the equity receivers in the equity case which preceded this voluntary petition in bankruptcy was a valid exercise of the power of this court.

C. The familiar old cry of "collusion" in a consent equity receivership is advanced again here, but, as usual, it had not any merit.

The whole rationale of consent receivership in equity has been considered so thoroughly in the Circuit Court of Appeals for this circuit in Ex parte Relmar Holding Co., 61 F.(2d) 941 (C. C. A. 2), Kingsport Press v. Brief English Systems, 54 F.(2d) 497 (C. C. A. 2), and Guaranty Trust Company v. International Pump Company, 231 F. 594 (C. C. A. 2), that it is unnecessary for me to deal with it here.

The case of First National Bank v. Flershem, 290 U. S. 504, 54 S. Ct. 298, 78 L. Ed. 465, 90 A. L. R. 391, cited by some of the objectors, does not apply to the instant case, for there the corporation involved in the receivership—the National Radiator Corporation—was found to be so highly solvent that it could meet its overdue interest and its current liabilities and yet still have ample working capital. See Id., 290 U. S. 504, 513, 514, 54 S. Ct. 298, 78 L. Ed. 465, 90 A. L. R. 391.

The Supreme Court found, therefore, that there was no reason for a receivership and, consequently, that there was a lack of equity at the time the bill of complaint in the receivership proceeding was filed and consent thereto was given. Id., 290 U. S. 504, 518, 519, 54 S. Ct. 298, 78 L. Ed. 465, 90 A. L. R. 391.

Certainly the case of Insull Utility Investments, Inc. (D. C.) 6 F. Supp. 653, 657, also cited by objectors, is not applicable here, for what Judge Evans criticized in that case was that the defendant company had not disclosed to the judge appointing the receiver the fact that it favored his appointment. He said:

"An involved company may explain its embarrassment to a creditor. It may select one creditor over others. It may urge a creditor to bring a suit and request the appointment of a receiver. It may furnish to said creditor the facts which show the advisability and necessity of the appointment of a receiver. It may recommend for receiver the name of one whom it prefers. All these things it may lawfully and properly do.

"But, it may not alone, or in conjunction with secured creditors whose security must, or may thereafter be, attacked by the receiver, induce said creditor to bring the suit and recommend as its own naming, a receiver selected by the company and said secured creditors. * * * It is not the bringing of a suit by a friendly creditor that is objectionable, nor is consent to the entry of a decree, evidence of collusion. It is only when the suit is one for the appointment of a receiver and the nominee proposed for receiver is urged by one who, assuming to speak as a creditor, voices the recommendation of those whose interests are adverse to that of the company and its creditors, that fraud appears."

In the present case Judge Bondy, however, was fully advised that Messrs. Hilles and Zukor were recommended for appointment as receivers by the company as well as by many of the creditors.

■ D. I might observe here, however, that consent receiverships in equity, although nominally based on a party and party suit, are not really so founded. As is well known such receiverships are arranged by the defendant in order to get court protection in the Court of its choice. When, therefore, the corporation itself has thus sought sanctuary and consented to a receivership, necessarily, the court may properly hold that the expenses of the receivership, thus secured, should be charged to the estate of the corporation. Cf. Finneran v. Burton, 291 F. 37, at pages 39 to 40 (C. C. A. 8) and cases there cited; and Burnrite Coal Briquette Company v. Riggs, 274 U. S. 208, 214, 215, 47 S. Ct. 578, 71 L. Ed. 1002.

E. One other question which has been raised which should be noticed here is the question whether the receivers and their attorneys and the defendants' attorney had a duty to defend the equity receivership in the event of its being attacked.

■ The receivers were officers appointed by the court into whose possession in this instance it put vast properties. It was unquestionably the duty of the receivers, through their attorneys, to endeavor to maintain their status as the appointed fiduciaries of those properties against all attacks. Cf. In re Hudson Electric Power Co., 173 F. 934, at page 956 (D. C.); and Blackstone v. Everybody's Store, 207 F. 752 at page 756 (C. C. A. 1).

Consequently, the lawyers employed by the receivers are entitled to have considered in connection with their other services such services as they may have rendered in resisting attacks on the receivership.

Furthermore, inasmuch as an equity receivership in a case of this kind could not be granted on the complaint of an unsecured creditor failing the consent of the defendant, Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 500, 43 S. Ct. 454, 67 L. Ed. 763, it may be properly asserted that the real situation in a case like this is as above noted, that the defendant has elected to have its estate conserved and administered by the federal court in equity in the district in which it consents to the plaintiff's complaint for the appointment of a receiver of its properties.

It seems to me, therefore, that it was clearly appropriate that the attorneys for the defendant should join the attorneys for the receivers in the effort to maintain the status thus selected by their client. I do not think that the cases of Barker v. Southern Building & Loan Association, 181 F. 636 (C. C.), or Culhane et al. v. Anderson, 17 F.(2d) 559 (C. C. A. 8) necessarily trench on this view, but, if they do, I disagree with them.

■ F. As to whether allowances should be granted, the test laid down by all the authorities is whether the services of the petitioner for an allowance—whether performed in the court wherein the petition is filed or elsewhere—have been of benefit to the estate in its conservation or administration. In re Cohen, 64 F.(2d) 103, 104 (C. C. A. 2).

Here there is not any question but that the services of the receivers in equity, their attorneys and the other attorneys, and petitioners here involved have been of benefit to this estate.

The quantum of the appropriate allowances must now be considered.

II. I now turn, therefore, to the question of the quantum of the allowances.

A. In approaching this question I have first divided the applications into two categories.

The first category consists of those petitioners who are continuing in the administration of the estate. They are Mr. Charles D. Hilles, who was one of the equity receivers and is now a trustee; Messrs. Root, Clark, Buckner & Ballantine, attorneys for the receivers in equity who are still continuing as attorneys for the trustees; Messrs. Rosenberg, Goldmark & Colin, who were the attorneys for the bankrupt in the receivership proceeding, and who are continuing as attorneys for it, now that it has gone into voluntary bankruptcy.

The second category consists of those petitioners who finished their connection with the estate at the end of the equity receivership.

These are Mr. Adolph Zukor, one of the receivers, and the several attorneys engaged in assisting the equity receivership in various ways including their work in connection with several so-called ancillary receiverships throughout the country, and

Messrs. Cravath, De Gersdorff, Swaine & Wood, because they are seeking an allowance for services, after the receivers in equity were appointed, in completing a successful resistance as attorneys for the bankrupt of an action for triple damages under the Sherman Anti-Trust Act (section 7 [15 USCA § 15 note]) brought against the bankrupt and others by Edward Quittner and another.

B. So far as the allowances to attorneys in these different categories are concerned, the difference I make is this:

I think that the value of legal services can be finally chancered more wisely at the termination of any proceeding than at an intermediate stage thereof, for only when the result of the efforts of attorneys is known do the elements on which the value of their services depend appear in their proper perspective. Cf. In re Osofsky, 50 F.(2d) 925, 927 (D. C.); Woodbury v. Andrew Jergens Co., 37 F.(2d) 749, 750 (D. C.).

C. For that reason I think that the allowance to be given to Messrs. Root, Clark, Buckner & Ballantine should be an allowance on account only and not an allowance in full, because the end is not yet and the result is not yet known.

But it must be remembered that it would be quite impossible for any small law office to have handled the situation with which the receivers' attorneys were faced when they were appointed. It required a plastic and well-organized firm and its use of its personnel in almost perfect co-ordination to achieve the results which have apparently been achieved to date herein.

The period of the equity receivership from January 26, 1933, when the receivers were appointed, to April 18, 1933, when the equity receivers turned over the assets of the Paramount-Publix Corporation to the trustees in bankruptcy, elected the day before, covered a period of unexampled depression in this country in which every type of business including banking was in a state approaching chaos.

To pilot a kind of, federated corporate structure—like the bankrupt—through such a period required the application not only of sound legal knowledge but great imagination to foresee the difficulties which might be encountered, in order that this great estate might be protected from disintegration and might be pulled safely through such an extremely difficult time.

I have already mentioned the complication of the corporate structure of the bankrupt, but it is also to be remembered that its assets had a book value of $149,000,000; that there was the real estate situation of the company, including its leases, to be studied; that there were pending litigations in many courts in many states which had to be properly met and adequately dealt with; that efforts had to be made to prevent as many ancillary equity receiverships as possible, and, where it was impossible to do this, to control such ancillary receiverships; that income taxes and their adjustments had to be dealt with during the very period in question; and that collections had to be made of many accounts which were due.

This was eminently a situation in which prompt and efficient measures, taken at once, would probably determine the ultimate success or failure not only of the conservation of the estate, but also of any possible reorganization thereof.

The amount of time put by the four members of the firm of Root, Clark, Buckner & Ballantine and their thirty-one associates who worked on the matter was great. Four members of the firm were engaged on it for 826⅝ hours, which would be equivalent to 103¼ eight-hour days, and their associates were engaged on it for 3,994½ hours, which would equal 499⅝ days, or one year and 134⅝ days.

These services were rendered under great pressure promptly and efficiently, at night as well as by day, from the beginning and throughout the difficult period in the national situation to which I have referred. Without these outside difficulties it would have been hard enough to rationalize and organize a situation for the best conservation of the assets of such a far-flung structure as that of the bankrupt; in the face of such difficulties the result, apparently achieved, approaches the unbelievable. It seems clear that the attorneys for the receivers did an extremely hard job as well as it could be done.

About the time the equity receivership was ended the tempo of events apparently slowed down, and I do not think from that time on the pressure has been so great on the attorneys or that it will again be so great.

However, the events of these successive conservation proceedings is still on the knees of the gods and, whilst the admirable

work which the receivers' attorneys did in consolidating the conservation and laying the foundation for successful administration of the estate must be recognized, it cannot, as I indicated above, be finally chancered, as it could be if the proceedings had come to an end and conspicuous success had crowned their efforts.

Consequently, I think that the proper method of dealing with the allowances to the attorneys for the receivers is to grant them an ad interim allowance, on account only, in the sum of $75,000.

D. As to Mr. Charles D. Hilles, one of the receivers, I think that his status is somewhat similar to that of his attorneys, Messrs. Root, Clark, Buckner & Ballantine. He was called on to exercise the greatest skill and effort for the period of the equity receivership, but what he achieved necessarily has not yet been tested by its ultimate results.

I shall, therefore, give him an allowance, on account only, leaving the final amount of his allowance to be fixed at the end of the whole conservation proceeding by whatever arm of the court that may be accomplished.

I, therefore, give him an ad interim allowance on account only in the sum of $20,000.

E. As to the application of Mr. Adolph Zukor, a co-receiver in the equity proceeding, it seems to me that, in view of the fact that the Bondholders' Committee is urging that suit be instituted against him for alleged waste of the company's assets, probably the best way of dealing with his petition for an allowance is to withhold any allowance until it can be determined whether or not this claim alleged against him is to be prosecuted, and, if prosecuted, whether it is successful or not.

Therefore, I do not grant any allowance to Mr. Zukor at the present time, but order that the question of his allowance be reserved without prejudice to his subsequent application for an allowance when the matters above adverted to have been disposed of in one way or another.

F. In regard to the allowance sought by the attorneys for the bankrupt, Messrs. Rosenberg, Goldmark & Colin, as I above stated, it was quite proper for them to help resist attacks on the status of their client in equity receivership, and in so doing they have contributed to the maintenance of a situation which I am thoroughly persuaded has been of great advantage to the estate.

Their client wished the sanctuary of the federal court in equity receivership, and then for perfectly proper reasons decided to change its relationship to the court from an equity receivership to a voluntary proceeding in bankruptcy.

This the equity court could not have forced them to do. Manhattan Rubber Mfg. Co. v. Lucey Mfg. Co., 5 F.(2d) 39 (C. C. A. 2); Municipal Financial Corp. v. Bankus Corp., 45 F.(2d) 902, 906 (D. C.). But it was quite open to the bankrupt to file a petition in voluntary bankruptcy on the ground that it could not pay its current indebtednesses though it was not insolvent in the sense of the present Bankruptcy Act (11 USCA § 1 et seq.). This it did, and, hence, arose this proceeding.

In all these matters the bankrupt's attorneys have played a useful part in the maintenance of the situation and are entitled to remuneration therefor.

They have already received $5,000 at the time when they were retained by the bankrupt and that is to be deducted from their ad interim allowance which I hereby fix at $15,000. Thus they may have a net ad interim allowance on account of $10,000, plus their disbursements in the sum of $253.66 as found by the referee.

G. On January 26, 1933, when the temporary receivers in equity were appointed, the action which has been referred to hereinbefore as the Quittner Case, and of which the title was "Edward Quittner and Middletown Combined Building Co. v. Motion Pictures Distributors of America, Paramount-Publix Corporation," et al., had been on trial before Judge Caffey and a jury for about eight weeks and Paramount-Publix Corporation was represented at the trial by Messrs. Cravath, De Gersdorff, Swaine & Wood, with Frederick H. Wood, of that firm as counsel.

It involved a claim by the plaintiffs for $5,130,000 for alleged violation of the antitrust acts.

When the temporary receivers were appointed the trial was adjourned temporarily. Thereafter on petition duly filed, Messrs. Cravath, De Gersdorff, Swaine & Wood were, by leave of this court, evidenced by an order duly signed on January 31, 1933, retained as special counsel by the temporary receivers. By order of Judge Bondy, signed February 1, 1933, the plaintiffs were allowed

to continue the action against the Paramount-Publix Corporation. The trial was that day resumed and proceeded thereafter continuously until February 24, 1933, when the plaintiffs' case was rested and Judge Caffey granted a motion to dismiss it.

The services for which Messrs. Cravath, De Gersdorff, Swaine & Wood seek an allowance is for the period in which they represented the temporary receivers in completing their successful defense of the Quittner Case.

From contact with the Quittner Case on certain interlocutory motions, I am able to realize from my own experience the complications therein involved.

I have not any hesitation, therefore, in saying that Messrs. Cravath, De Gersdorff, Swaine & Wood are entitled, under these circumstances, to the amount for which they petition, to wit, $15,000, plus their disbursements in the sum of $409.68 as found by the referee; for their services were demonstrably in the interest of the bankrupt's estate.

Settle order on notice.

#### Supplemental Memorandum.

In my opinion herein, dated July 23d, and filed July 30, 1934, I modified the referee's report as indicated at the beginning of my opinion, and in other respects I confirmed it.

My attention has been called, since the opinion was filed, to the fact that in respect of the allowance to Messrs. Wilson & McIlvaine, of Chicago, Ill., for $300, which was disallowed by the referee on the point raised by the referee that they had not acted at the request of the ancillary receivers in Chicago, was explained and corrected by an affidavit filed before me in connection with the argument had on the subject of allowances herein.

In that affidavit by Mr. Ethan D. Alyea, verified January 16, 1934, there is a full explanation of the circumstances under which Messrs. Wilson & McIlvaine came into the case.

It is shown therein that they did act at the request of the receivers in equity here and that they filed an ancillary petition in Chicago.

I think, therefore, that the allowance requested by them is fully justified and it may, therefore, be included in the order to be entered on my aforesaid opinion.

Consequently, the allowance asked for by Messrs. Wilson & McIlvaine in the sum of $300 will be granted, together with their expenses in the sum of $20.97, and may be paid at once by the trustees as provided in respect of the other allowances fixed in my opinion above mentioned.